503 So.2d 519 (1987)
Vincent B. RECARD, Jr., Plaintiff-Appellee,
v.
TRINITY UNIVERSAL INSURANCE CO., et al., Defendants-Appellants.
No. 86-161.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1987.
Rehearing Denied March 13, 1987.
Writ Granted May 15, 1987.
*520 Stafford, Stewart & Potter (Russell L. Potter and Brad Gadel), Alexandria, for defendants-appellants.
*521 Herman M. Savoie, Jr. and Richard W. Beard, Alexandria, for plaintiff-appellee.
Gold, Simon (Sam Pooke, Jr.), Alexandria, for defendant-appellee.
Gregory Walker, Jr., Alexandria, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and KNOLL, JJ.
GUIDRY, Judge.
Vincent B. Recard, Jr. brought this suit against Simuel M. Wooley, his employer, Cenla Auto Parts (Cenla), Cenla's liability insurer, Trinity Universal Insurance Company[1] (Trinity), and The Travelers Insurance Company (Travelers), seeking damages allegedly suffered as a result of a vehicular collision which occurred on July 28, 1983. This case was consolidated at trial with two other cases, Phillip W. Wagner and Linda Wagner vs. Simuel M. Wooley, et al, (Wagner Suit), Civil Suit No. 132,769, and Royal Insurance Company and Alexandria Coca-Cola Bottling Co. vs. Simuel M. Wooley, et al, (Royal Suit), Civil Suit No. 132,779, which arose out of the same collision, with the instant suit being tried to a judge and one of the two other suits being tried to a jury.[2] Judgment was rendered in the instant case in favor of plaintiff, Recard, and against Trinity. From this judgment, Trinity, Wooley and Cenla appeal. Plaintiff did not appeal or answer the appeal.

FACTS
The accident giving rise to this suit occurred on July 28, 1983, at approximately 3:00 p.m. at the intersection of Louisiana Highway 28 West and Windermere Boulevard, near the city of Alexandria. Highway 28 West is a four-lane thoroughfare which runs east and west. The east and west lanes are separated by a grass median. Windermere Boulevard is a two lane road which runs south and perpendicular to Highway 28 West and intersects the eastbound lanes of Highway 28 West, changing into Calvert Street on the north side of Highway 28 West. Highway 28 West is the favored highway. The entrances to Highway 28 West from Windermere Boulevard and Calvert Street are controlled by stop signs.
Just prior to the accident, Phillip Wagner was operating a 1982 Oldsmobile Cutlass in the right-hand, eastbound lane of Highway 28 West heading toward Alexandria. At this time, Wagner was in the course and scope of his employment with the Louisiana State Police, in an unmarked car owned by the State. Plaintiff, Vincent B. Recard, Jr., was stopped at the stop sign at the intersection of Windermere Boulevard and Highway 28 West, waiting for the eastbound traffic to clear so that he could turn right (eastbound) onto Highway 28 West. Recard was also acting in the course and scope of his employment with the Alexandria Coca-Cola Bottling Company. Recard was driving a 1983 Chevrolet pickup truck owned by his employer. To complete the scenario, Simuel M. Wooley was operating a red 1975 Chevrolet pickup truck and was also acting in the course and scope of his employment with Cenla Auto Parts. Wooley was driving south on Calvert Street toward the Highway 28 West intersection, with the intent to cross over Highway 28 West onto Windermere Boulevard.
The trial judge made the following factual findings regarding the events which led to the accident in question. When Wooley reached the intersection of Calvert Street and Highway 28 West, he ran the controlling stop sign and crossed over the two westbound lanes of Highway 28 West, entering into the area of the median. Wagner observed the actions of Wooley and assumed that Wooley also intended to violate the eastbound lanes of traffic. In an attempt to avoid the anticipated collision with the Wooley vehicle, Wagner slammed on his brakes and veered to his right. In doing so, Wagner lost control of his vehicle, *522 slid through some loose gravel in the roadway and slammed into Recard's truck, which was still stopped at the stop sign at Windermere Boulevard.
Recard instituted the present suit to recover for the personal injuries which he sustained as a result of the accident.[3] Made defendants were Wooley; his employer, Cenla; Cenla's liabiity insurer, Trinity; and, Wagner's insurer, Travelers. Recard's original petition sought damages in the amount of $250,000.00. An answer was filed by Trinity, Cenla and Wooley requesting a jury trial.
By third party demand, Travelers sought indemnity and/or contribution from Trinity, Cenla and Wooley. Travelers also petitioned the court for a trial by jury. Trinity, Cenla and Wooley responded to Travelers' third party demand with a third party demand of their own for indemnification and/or contribution against Travelers.
The three consolidated cases were tried on June 18 and 19, 1985. Prior to the commencement of the trial, Recard, with leave of court, amended his petition to reduce his damage claim to $9,999.99. Thereafter, the trial court rescinded its order allowing a jury trial.[4] The Wagner suit was then tried to a jury while the instant suit was tried to the judge.
Following trial, this matter was taken under advisement by the trial court. On November 6, 1985, the trial court rendered judgment in favor of Recard and against Trinity in the sum of $9,999.99, together with legal interest and costs. Although the judgment was rendered solely against Trinity with no mention of either Wooley or Cenla, this appears to have been an oversight on the part of the trial judge, as in his written reasons for judgment, he expressed that Wooley and Cenla were to be cast in judgment along with Trinity. No mention was made in the judgment as to either of the third party demands. It is settled that silence in a judgment as to third party demands is considered as a rejection of same. Hatcher v. State, Dept. of Transportation and Development, 478 So.2d 774 (La.App. 3rd Cir.1985), writ denied, 479 So.2d 923 (La.1985).
The jury in the Wagner suit returned a verdict finding Wagner to be 70% at fault in causing the accident and Wooley to be 30% at fault. However, pursuant to a motion by Travelers for a judgment notwithstanding the verdict, the trial judge rendered judgment in the Wagner case in conformity with his judgment in the instant case, finding Wooley to be 100% at fault in causing the accident.
Trinity, Cenla and Wooley appeal from the trial court's judgment. No appeals were taken in the Wagner suit or the Royal suit, therefore the judgments in those suits are now final.
Appellants urge the following five assignments of error on appeal:
1. The trial judge erred in not granting a jury trial to appellants since the Recard case was consolidated for trial purposes with two other cases, one of which was to be tried by jury.
2. The trial judge erred in allowing Recard to reduce his demand below $10,000.00 on the morning of trial.
3. The trial judge erred in not harmonizing his verdict with the verdict reached by the jury in the Wagner suit.
4. The trial judge erred in refusing to allow into evidence testimony regarding a prior accident which Wagner had been involved in.
5. The trial judge erred in awarding Recard $9,999.99 for his injuries.

APPELLANTS' RIGHT TO A JURY TRIAL
Through their first two assignments of error, appellants argue that Recard's suit against them should have been tried to a jury.
*523 Appellants first assert that, since the instant case was consolidated with two other cases, one of which was to be tried to a jury, that this case should likewise have been tried to a jury. There is no support in our law for such contention.
Consolidation of actions, pursuant to La. C.C.P. art. 1561, is a procedural device designed to avoid multiplicity of actions. Consolidation does not cause a case to lose its status as a procedural entity. Howard v. Hercules-Gallion Co., 417 So.2d 508 (La. App. 1st Cir.1982), writ denied, 420 So.2d 984 (La.1982). Rights peculiar to one case do not become applicable to a companion case by the mere fact of consolidation. Williams v. Scheinuk, 358 So.2d 340 (La. App. 4th Cir.1978). Moreover, a motion to consolidate a non-jury case with a jury case results in a bifurcated trial, one tried by a jury and the other by the judge. Deville v. Town of Bunkie, 364 So.2d 1378 (La.App. 3rd Cir.1978), writ denied, 366 So.2d 564 (La.1979); Thornton v. Moran, 348 So.2d 79 (La.App. 1st Cir.1977), writs refused, 350 So.2d 897, 898 and 900 (1977).
We find appellants' second contention equally without merit. La.C.C.P. art. 1732 specifically prohibits a jury trial in certain enumerated cases, the present case being one such case as the amount demanded was below $10,000.00. Thus, the trial court was legislatively prohibited from allowing the instant case to be tried to a jury once the plaintiff reduced his demand to an amount below $10,000.00.
Appellants argue, however, that the trial court erred in allowing Recard to reduce his claim to $9,999.99 on the morning of the trial, as his sole purpose for doing so was to prejudice appellants and circumvent their right to a jury trial.
La.C.C.P. art. 1151 provides in pertinent part the following rules for the amendment of a petition by plaintiff:
"A plaintiff may amend his petition without leave of court at any time before the answer thereto is served. He may be ordered to amend his petition under Articles 932 through 934. A defendant may amend his answer once without leave of court at any time within ten days after it has been served. Otherwise, the petition and answer may be amended only by leave of court or by written consent of the adverse party."
A trial court has much discretion in refusing or allowing an amendment to a petition after an answer is filed, and his ruling will not be disturbed on appeal unless there has been an abuse of the broad discretion vested in him. White v. Cumis Insurance Society, 415 So.2d 574 (La.App. 3rd Cir. 1982), writ denied, 420 So.2d 164 (La.1982).
The trial court's great discretion in allowing Recard's amendment to his petition on the day of trial must be considered in light of the appellants' right to a trial by jury.
A litigant's right to a jury trial, when timely applied for, is fundamental in character and should be protected in all cases except those in which it is specifically denied by law. Triche v. City of Houma, 342 So.2d 1155 (La.App. 1st Cir.1977); La. C.C.P. art. 1732. Therefore, every presumption against a waiver, loss or forfeiture of the right to a trial by jury will be indulged in by the courts. Champagne v. American Southern Insurance Co., 295 So.2d 437 (La.1974). However, the right to a jury trial is contingent upon the good faith amount in dispute, and not simply the amount demanded. Rico v. Vangundy, 461 So.2d 458 (La.App. 5th Cir.1984).
In the instant case, Recard's initial petition for damages against defendants was for the sum of $250,000.00. On the day of trial, Recard secured leave to and did amend his petition to reduce his claim to $9,999.99. The effect of such amendment did deprive appellants of their right to a trial by jury. However, considering the relatively minor injuries suffered by Recard in the automobile accident (see our discussion of appellants' final assignment of error), we cannot say that Recard was not in good faith in reducing his demand to $9,999.99. Recard's initial demand of $250,000.00 was grossly inflated and his amended demand was much more in line with the actual damages suffered by Recard in the accident.
*524 Therefore, we find no abuse of discretion in the trial court's action allowing Recard to amend his petition on the day of trial to reduce his demand below $10,000.00. For these reasons, we find no merit in appellants' first two assignments of error.

HARMONIZING THE VERDICTS
Appellants argue through this assignment of error that the trial judge erred in failing to harmonize his verdict in the instant case with the verdict reached by the jury in the Wagner case. Appellants contend that, since the present case was part of a bifurcated trial, the appellate court should resolve the differences between the cases and render a single harmonized decision based upon the record as a whole, and that the manifest error rule should not apply.
Appellants' contention that the instant suit was part of a bifurcated trial is correct. We would also agree that if the judgments in all consolidated cases had been appealed, it would be incumbent on this court to resolve the differences in the factual findings between the jury and the judge and render a single harmonized opinion based upon the record without restraint of the manifest error rule. Thornton v. Moran, supra. However, no appeals were perfected in the Wagner and Royal cases and the judgments rendered in those cases are now final. Under such circumstances, there are no conflicting judgments which must be harmonized on appeal. We, therefore, conclude that the rationale of Thornton v. Moran, supra, does not apply and the decision of the trial court in this case should be reviewed in conformity with the manifest error rule as enunciated in Canter v. Koerhing Company, 283 So.2d 716 (La.1973).[5] We consider that this assignment of error and appellants' argument in support thereof is sufficient to raise the issue as to whether the trial court clearly erred in attributing 100% causative fault to Wooley.
The trial judge determined that Wooley's actions created an emergency situation, thereby relieving Wagner of any negligence. For the following reasons, we find that the trial judge clearly erred in its application of the sudden emergency doctrine in the instant case.
The Louisiana Supreme Court set forth the doctrine of sudden emergency in Hickman v. Southern Pacific Transport Co., 262 La. 102, 262 So.2d 385 (1972), as follows:
"One who suddenly finds himself in a position of imminent peril, without sufficient time to consider and weigh all the circumstances or best means that may be adopted to avoid an impending danger, is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence." (Citations omitted).
In Dick v. Phillips, 253 La. 366, 218 So.2d 299 (1969), the Supreme Court held:
"Although [defendant] invokes the doctrine of sudden emergency to exculpate himself from a charge of negligence, the doctrine is not available to him. The rule of sudden emergency cannot be invoked by one who has brought that emergency on himself by his own wrong or who has not used due care to avoid it. The sudden emergency doctrine is applicable to the standard of conduct of a motorist after an emergency has arisen, it does not apply to lower the standard of care required of motorists before the emergency occurs. (Citations omitted)"
The trial court found, based upon the testimony of Wagner and Recard, that Wooley ran the stop sign at the intersection of Calvert Street and Highway 28 *525 West, proceeded across the westbound lanes of Highway 28 West at a "high rate of speed", approached the median and gave the appearance that he was going to enter the eastbound lanes of Highway 28 into the path of Wagner. The trial court thereafter found that Wagner "reacted normally by slamming on his brakes and veering to the right to avoid the vehicle that was apparently preparing to enter his lane of traffic".
Although Wooley stated at trial that he did not run the stop sign at Calvert Street, both Wagner and Recard testified that he did indeed run the stop sign and we accept the trial court's finding in this respect. Nevertheless, Wooley testified that he crossed the westbound lanes of Highway 28 West at a speed of between 15 to 20 miles per hour. Wooley admitted at trial that he was in a hurry at that particular time and would not have traveled that fast under normal circumstances. However, Wooley stated that he did in fact stop in the median, some six to eight feet prior to the edge of the eastbound lanes of traffic. The evidence presented at trial supports this fact. Wagner testified that after the accident he looked and saw Wooley's vehicle stopped in the median. Additionally, the investigating police officer stated that no tire or skid marks were found in the area of the median. Thus, it is clear from the evidence that Wooley did not come to an abrupt screeching halt in the median prior to reaching the eastbound lanes of Highway 28 West. Although the trial court found that Wooley was driving at a "high rate of speed", there is no evidence to indicate that such speed exceeded Wooley's stated speed of between 15 to 20 miles per hour.
Wagner testified at trial that he observed Wooley run the Calvert Street stop sign and cross the westbound lanes of Highway 28 West at a high rate of speed. Wagner further testified that:
"... He [Wooley] entered the median still moving at a pretty good clipper, uh, moving at a high rate of speed, and uh, I can, uh, at a point when he was in the median I decided that he wasn't going to stop, he was going to keep on coming so I applied my brake and I, uh, tried to get away from him and steered to the right, then my vehicle hit that rough spot in the gravel and I ended up, uh, running into Mr. Recard's vehicle ..."
Wagner stated that at no time did he see the Wooley vehicle slow down, and that when he last observed him, Wooley was still proceeding at a fast rate of speed. Wagner testified that he initially prepared to brake when he saw Wooley run the stop sign and that he actually put his foot on the brake when Wooley entered the median. Wagner states that he applied his brakes in a "controlled manner" initially, and then applied his brakes harder and they locked up. He steered his vehicle to the right and lost control of it, slamming into the driver's side of the Coca-Cola truck occupied by Recard. The physical evidence obtained at the scene of the accident indicates that the Wagner vehicle left approximately 105 feet of skid marks.
In light of the facts presented at trial, we conclude that Wagner's conduct is not excusable under the sudden emergency doctrine. The sudden emergency doctrine does not apply to lower the standard of care required of motorists before the emergency occurs. Although Wagner may have subjectively believed that Wooley would violate his right of way, it is clear that Wagner was never in imminent peril. The facts are clear that Wooley never actually violated Wagner's right of way, nor even came close to doing so. In our view, Wagner did not exercise due care under the circumstances, in that, he overreacted to the situation. As noted earlier, the rule of sudden emergency cannot be invoked by one who has brought that emergency on himself by his own wrong or who has not used due care to avoid it. Thus, while a sudden emergency will excuse the failure to exercise a choice that, in light of after events, might not have been the best and may otherwise have been negligent, the motorist must still use the care that a prudent person would to extricate himself from the situation.
*526 It is obvious that Wooley was negligent in running a stop sign and in proceeding across the westbound lanes of Highway 28 West at a relatively "high rate of speed". However, it is equally clear that Wagner overreacted to the situation by slamming on his brakes and veering to his right before taking sufficient time to assess the situation and determine whether Wooley was actually going to stop in the median area. A motorist's duty of reasonable care includes the duty to keep his vehicle under control and to maintain a proper lookout for hazards. Andrus v. State, Department of Transportation and Development, 476 So.2d 1077 (La.App. 3rd Cir.1985). Although it is apparent that Wagner was looking out for possible hazards, his excessive reaction to the situation at a time when he was not yet faced with imminent danger does not constitute a proper lookout. Had Wagner maintained a proper lookout, he would have seen Wooley's vehicle slow down in the median, leaving him with sufficient time of his own to reduce his speed and prepare to brake if in fact it became clear to him that Wooley was going to violate his right of way. Consequently, we find that Wagner was contributorily negligent and that he is not relieved of responsibility therefor by application of the sudden emergency doctrine.
Having determined that the trial judge's allocation of 100% fault to Wooley was clearly wrong, we must assess the percentages of fault in the instant case based upon the evidence before us. Considering the totality of the evidence discussed above, we conclude that Wooley and Wagner were equally (50% each) at fault in causing the accident and resulting injuries to plaintiff.

MOTION IN LIMINE
Appellants' fourth assignment of error involves the trial court's refusal to allow into evidence testimony regarding a prior accident in which Wagner had been involved. We find no error in the trial court's ruling in this regard.
Prior to trial, appellants filed a motion in limine, seeking an order from the court regarding the admissibility of certain evidence. One such request was for the trial court to allow appellants to introduce at trial evidence of an accident in which Wagner was involved which occurred in October 1982, under similar circumstances.
It was appellants' intention to prove that Wagner's reactions in the instant case were the result of his "psychological and emotional memories of the 1982 accident". Apparently, Wagner was involved in a similar automobile accident in 1982 in which a red pickup truck encroached upon his right of way, thereby resulting in a serious collision between the two vehicles. As a result of the accident, three persons in the pickup truck were killed. Appellants sought the introduction of such evidence to establish that Wagner overreacted in the instant case because of his prior tragic encounter with a red pickup truck darting into the path of his vehicle. The trial judge refused to admit such testimony into evidence.
We find no error in the trial court's ruling. Such evidence, in and of itself, is insufficient and inappropriate to establish Wagner's state of mind at the time of the instant accident. Appellants sought to introduce such evidence for the sole purpose of having the trial judge infer from such that Wagner's actions were motivated by his past experience with a darting red pickup truck. The inference sought to be drawn concerns a matter of expert medical opinion which appellants were not prepared to establish. Inferences must be reasonably drawn from and supported by facts on which they purport to rest, and may not be the result of mere surmise and conjecture. Terre Haute Plantation, Inc. v. Louisiana & Arkansas Railway Co., 210 So.2d 566 (La.App. 4th Cir.1968), writ denied, 252 La. 845, 214 So.2d 164 (1968). We therefore find no merit to this assignment of error. We do note that although we have determined herein that Wagner did overreact in the instant case, with such actions being a contributory cause of the accident, such determination was based solely on the evidence presented at trial of the instant matter and has no connection with the prior Wagner accident.

*527 QUANTUM
Finally, appellants argue that the trial court's award of damages to Recard is excessive and unsupported by the record. The trial court awarded Recard $9,999.99 in damages. Of this amount, appellants contest only the general damage award of $8,063.54.
As stated earlier, the accident in question occurred on July 28, 1983. Recard was in his early 20's at the time of the accident. The evidence presented at trial indicates that the front of Wagner's vehicle struck the driver's side of the Coca-Cola truck occupied by Recard. The impact of the collision caused Recard to be thrown from the truck through the window on the passenger's side of the vehicle onto the shoulder of the highway. Recard sustained injury to his left thumb, neck and back.
Following the accident, Recard was taken by ambulance to Rapides General Hospital in Alexandria. X-rays were taken at the hospital of Recard's thumb, neck and back. The x-rays of Recard's left thumb revealed that he had a sprain involving the metacarpal phalangeal joint. Recard was also diagnosed as having a cervical and lumbosacral strain.
On August 1, 1983, Recard sought treatment for his neck and back pain from Dr. Edward R. Villemez, Jr. Dr. Villemez performed a neurological examination on Recard which turned out normal. Dr. Villemez advised Recard to continue taking the pain medications, muscle relaxants and anti-inflammatory medications which were prescribed for him by the physician who attended him at Rapides General. Dr. Villemez also prescribed heat treatments and rest.
Recard continued to see Dr. Villemez for the pain which he was experiencing in his neck and back until October 11, 1983. All of the x-rays obtained during this time were negative, revealing no fractures or dislocations. Dr. Villemez noted that during this period of time, Recard had limited range of motion in his neck and back, associated with some pain and tenderness. Dr. Villemez prescribed a program of physical therapy, which Recard followed from August 8, 1983, through August 26, 1983. At this time, Dr. Villemez opined that Recard had obtained the full benefit from physical therapy. In September and November of that year, he returned to the physical therapist on three more occasions.
On August 29, 1983, Dr. Villemez released Recard to return to work at his job with Coca-Cola. Recard testified that when he returned to work, he was still not able to perform all of his regular duties. He experienced problems with lifting and also with delivering, as it was very uncomfortable for him to drive a truck. Recard claims that he continued having problems with his neck and back for the following three to four months.
On October 11, 1983, Recard again consulted Dr. Villemez with complaints of pain in his lower back. Recard related to Dr. Villemez that he had lifted a 60 pound tank the day before. Dr. Villemez opined that his injury was possibly an additional injury not related to his July accident.
Recard did not return to Dr. Villemez again until April 11, 1985, almost a year and a half after the auto accident. At that time, Recard complained of pain in his right shoulder which he stated had been hurting off and on since the July accident, but which had increased within the previous 48 hours. Dr. Villemez found tenderness in the region of the bicipital groove of the shoulder. The x-rays performed on Recard at that time were negative. Dr. Villemez thereafter referred Recard to an orthopedist, Dr. Donovan Perdue. Although Dr. Perdue was not called to testify in this matter, Dr. Villemez testified concerning a report which he received from Dr. Perdue relating to his examination of Recard. In that report, it was intimated that Recard's complaints of pain at that time were related to an injury which he had received while moving some coke machines at work. Dr. Villemez testified that tendinitis of the shoulder could be consistent with lifting or moving heavy objects, and that it is not uncommon for men who perform heavy manual labor to have periodic aches and pains and back strains from lifting objects. Dr. Villemez concluded that he expects full *528 recovery of Recard from the effects of the 1983 automobile accident.
Recard stated at trial that he still has back and neck pains. When asked how often he suffers from these problems, Recard stated, "[w]ell, I have problems like I have a hard day at work, I, I get tired, a whole bunch of time I get short of wind because I can't do it like I really started, when I first started at first". Recard also stated that he has problems laying down and sleeping. He claims that he is not comfortable because his neck and back still bother him.
We are guided by the principle enunciated in Reck v. Stevens, 373 So.2d 498 (La. 1979), that an appellate court may not alter the trial court's award of damages absent a finding that such was the result of a clear abuse of discretion. We cannot say that the trial court's award in the instant case constituted a clear abuse of discretion.
Although Recard was released to return to work a month after his injury, the lay testimony indicates that he continued to suffer pain in his neck and shoulder for the next three or four months. Such pain limited Recard's movements and activities during that period. We do not, however, find that Recards's complaints of pain following that time relate back to the July 1983 accident. Such pain was apparently related to subsequent strains which Recard sustained while lifting and moving heavy items at work.
Although we find the trial court's award of $8,063.54 in general damages in the upper range, we cannot say that it exceeds the highest award which was reasonably within the discretion of the trier of fact.
For the reasons aforestated, we conclude that Wagner and Wooley were equally at fault in causing the accident which occasioned injury to plaintiff. Plaintiff initially brought suit against Wagner's insurer, Travelers, and Wooley, his employer and its insurer. However, Travelers was dismissed from this suit by judgment of the trial court which, absent any appeal by plaintiff, is now final. Since Travelers has been effectively released from any liability to plaintiff, Wooley, Cenla and Trinity have been effectively deprived of any right to contribution from Travelers. Under these circumstances, defendants, Wooley, Cenla and Trinity, are entitled to reduce their obligation to plaintiff. Wall v. American Employers Insurance Company et al, 386 So.2d 79 (La.1980); Garrett v. Safeco Insurance Company, 433 So.2d 209 (La.App. 2d Cir.1983). Accordingly, the judgment of the trial court will be amended and recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, VINCENT B. RECARD, JR., and against the defendants, SIMUEL M. WOOLEY, CENLA AUTO PARTS, and TRINITY UNIVERSAL INSURANCE COMPANY, in solido, in the full sum of FIVE THOUSAND AND NO/100 ($5,000.00) DOLLARS, together with legal interest on such sum from date of judicial demand until paid.
Costs at the trial level and on appeal are assessed one-half (½) to appellee and one-half (½) to appellants.
JUDGMENT RECAST AND RENDERED.
PER CURIAM.
In our original opinion, we stated as follows:
"For the reasons aforestated, we conclude that Wagner and Wooley were equally at fault in causing the accident which occasioned injury to plaintiff. Plaintiff initially brought suit against Wagner's insurer, Travelers, and Wooley, his employer and its insurer. However, Travelers was dismissed from this suit by judgment of the trial court which, absent any appeal by plaintiff, is now final. Since Travelers has been effectively released from any liability to plaintiff, Wooley, Cenla and Trinity have been effectively deprived of any right to contribution from Travelers. Under these circumstances, defendants, Wooley, Cenla and Trinity, are entitled to reduce their obligation to plaintiff. Wall v. American Employers Insurance Company et al, 386 So.2d 79 (La.1980); Garrett v. *529 Safeco Insurance Company, 433 So.2d 209 (La.App. 2d Cir.1983). Accordingly, the judgment of the trial court will be amended and recast as follows:"
Plaintiff-appellee urges in his application for rehearing that we erred in reducing defendants' obligation to plaintiff, arguing that the rationale of Wall, supra, and Garrett, supra, apply only where a plaintiff, by contract, settles with a joint tortfeasor and releases him. We do not agree.
The right of a co-debtor in solido to seek contribution from the other obligors is founded on the concept of legal subrogation. Harvey v. Travelers Insurance Company, 163 So.2d 915 (La.App. 3rd Cir. 1964). In Harvey, supra, we stated:
"... in the event the creditor by his own act deprives one solidary obligor of this right of legal subrogation against another solidary obligor, then the creditor is not entitled to recover from the first debtor the share of the debt owed by the other against whom no right of subrogation remains." (Citations omitted).
In the instant case, plaintiff did not appeal from the judgment of the trial court which dismissed his demands against Travelers Insurance Company with prejudice. That judgment is now final and plaintiff retains no rights against Travelers to which the defendants can be subrogated. Therefore, in our opinion, the defendants are entitled to reduce their obligation to plaintiff.
The cases relied upon by plaintiff-appellee are inapposite, i.e., Mullin v. Skains, 252 La. 1009, 215 So.2d 643 (1968), and Holmes v. State, Through the Department of Transportation and Development, 466 So.2d 811, 825 (La.App. 3rd Cir.1985), writ denied, 472 So.2d 31 (La.1985). In Mullin and Holmes, supra, the plaintiffs voluntarily dismissed alleged joint tortfeasors without prejudice, prior to judgment. This is the pivotal distinction between the instant case and those cases.
Finally, plaintiff-appellee's argument that defendants' right to contribution has not been impaired, since they may still seek contribution from Travelers' insured, Wagner, who was not make a party to the suit by plaintiff is also without merit. See Cornish v. Freeman, 451 So.2d 148 (La.App. 1st Cir.1984), writ denied, 458 So.2d 476 (La.1984).
For these reasons, the application for rehearing is denied.
NOTES
[1] Trinity Universal Insurance Company was also referred to in the record as Trinity Universal Insurance Company of Kansas, Inc.
[2] The Wagner suit was tried to a jury. It was agreed between the parties that the Royal suit was to be decided in accordance with the jury's findings in the Wagner suit.
[3] The two other suits consolidated with the Recard suit were for the property damage caused to the vehicle owned by Alexandria Coca-Cola Bottling Company and for the personal injuries suffered by Wagner in the accident.
[4] La.C.C.P. art. 1732 provides in part that a jury trial shall not be available in cases in which the amount in dispute does not exceed $10,000.00, exclusive of interest and costs.
[5] It is interesting to note that, although appellants argue that the decision in this case be harmonized with the decision in the Wagner and Royal cases, there presently exists no conflict between the three. Since the judge granted Travelers' motion for a judgment NOV, all three cases hold that the sole cause of the accident in question was Wooley's negligence in creating the emergency situation.