569 So.2d 1044 (1990)
Edward J. HANNIE, Plaintiff-Appellant,
v.
E. Kenneth WALL, et al, Defendants-Appellees.
Nos. 89-546, 89-828.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1990.
*1045 Roy & Hattan, L. Lane Roy, Lafayette, for plaintiff-appellant.
Kantrow, Spaht, Weaver & Blitzer, Paul H. Spaht; Phelps, Dunbar, Marks, Claverie & Sims, H. Alston Johnson, III, Jennifer Zimmerman, Steven J. Levine, Baton Rouge, Juneau, Judice, Hill & Adley, Marc W. Judice and Michael J. Juneau, Lafayette, for defendants-appellees.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
YELVERTON, Judge.
These two appeals come from final judgments rendered in the same case in the district court. The case was a legal malpractice suit against two attorneys. New England Insurance Company, the malpractice insurer of the attorneys, won judgments dismissing it on peremptory exceptions. One judgment maintained an exception of res judicata, with respect to the *1046 liability of the insurer for the actions of one of the attorneys. The other judgment maintained an exception of liberative prescription of one year, with respect to New England's liability for the malpractice of the other attorney defendant. Both attorneys, before these exceptions were maintained, had been themselves dismissed from the lawsuit, one because he settled the case, and the other because he was discharged in bankruptcy. New England, until its dismissal on these exceptions, was left in the suit in its capacity as the professional liability insurer of these two attorneys. For reasons which we will now explain, we affirm the judgments on both exceptions. We will begin our explanation by setting out in necessary detail what this suit was all about.
Edward J. Hannie, a dentist turned businessman, had for some three decades enjoyed a continuously expanding real estate investment business in the Lafayette, Louisiana, area. In 1979, he met two attorneys in Lafayette, E. Kenneth Wall and Daniel V. Hiatt, who were also counselors and participants in business investments. These three joined forces, and embarked upon an adventurous investment relationship, most of which involved limited partnerships. Between 1979 and 1982, the three participated in seven investments: (1,2,3) three Popeye's fast food franchises, one in Lafayette, one in Dallas and one in Beaumont, Texas; (4) the Ole Coach apartment hotel in San Angelo, Texas; (5) the Place One apartment houses in Lafayette, Louisiana; (6) the King Frederick apartment complex in the New Orleans area; and (7) purchase of a private airplane. All except the aircraft were limited partnership syndications.
There was an attorney-client relationship between Hannie on the one hand, and Wall and Hiatt and their law firm on the other. Their business relationship necessarily required legal services. Because all three were involved financially in the business ventures, theirs was also a business relationship.
The businesses did not do as well as Dr. Hannie wanted them to do. He felt that this was due in large part to the bad legal advice that he had received from Wall and Hiatt. So it was that on March 19, 1984, he filed a suit against Wall, later amending it to include Hiatt and the law firm, and XYZ Insurance Company, alleging legal malpractice, and seeking recovery in the amount of $5,000,000 for damages allegedly incurred as a result of the bad investments.

PROCEDURAL HISTORY OF THIS LAWSUIT
Two years after the suit was filed, and following considerable discovery, Hannie and Hiatt and others (but not Wall) settled the case and executed a mutual release of all claims. On April 27, 1987, the trial court signed a partial judgment of dismissal with reservation of rights, based on the release. The judgment dismissed with prejudice all claims against Hiatt, reserving to plaintiff rights against the other parties not specifically dismissed. Wall at this time had not been dismissed.
Hiatt was discharged in bankruptcy on October 19, 1987, and Hannie was one of his listed creditors. The debt he listed was an obligation arising from the settlement with Hannie.
In the meantime, Hannie filed a supplemental petition on October 10, 1986, naming New England Insurance Company as the professional liability insurer of Wall, and another supplemental petition on September 16, 1987, naming New England as the professional liability insurer of Wall and Hiatt.
Also in the meantime, Wall, who had sought relief in the bankruptcy court, was discharged on February 3, 1986. In November of 1988, he was dismissed from this lawsuit in his individual capacity by virtue of that 1986 discharge in bankruptcy.
New England was now the lone defendant in the lawsuit. In November 1988, New England, as Hiatt's insurer, filed an exception of res judicata based upon Hiatt's earlier dismissal with prejudice arising out of the settlement agreement with Hannie. The trial court granted this exception and dismissed New England in its capacity *1047 as Hiatt's insurer, on January 12, 1989. Hannie appealed that dismissal.
On April 12, 1989, New England, as the professional liability insurer of Wall, filed an exception of prescription. Following a lengthy hearing, and after considering a record made up of 17 volumes of pleadings, exhibits and depositions, the trial court granted this exception. Hannie appealed that judgment also.
Although the judgment maintaining the exception of res judicata came first, we will discuss the exception of prescription first. We do this because it involves Wall, the principal actor among the defendants in the events between 1979 and 1982, and the factual background for the exception of prescription will make it easier for the reader to understand the discussion of the exception of res judicata.

PRESCRIPTION
The trial court found as a fact that the attorney-client relationship between Hannie and Wall ended in June 1982, that by then Wall's wrongful acts, as well as the resultant damages, were known to Hannie, and that the one-year prescriptive period on legal malpractice at that time began to run. The trial court held that the one-year prescriptive period had run before suit was filed on March 19, 1984. In oral reasons for sustaining the exception of prescription the trial court said:
One, on the plane, I don't think there was any legal advice involved. Might have been investment advice. If it was legal, then it has prescribed because he was making payments that he had been told he would not have to make, and he sustained damages. On the other entities, he was sustaining damages right off the bat; and the Court is of the opinion that... these causes of action have prescribed. He sued too late. He was sustaining losses as early as '81. He terminated Wall's legal relationship in June '82. He didn't sue until March of '84.
On this appeal Dr. Hannie poses as the issue of first importance, the argument that the trial court erred in failing to consider the various guarantees made by Wall to Dr. Hannie, and consequently failed to apply the ten-year prescriptive period applicable when an attorney warrants a particular result. The appellant cites in support of this argument the case of Cherokee Restaurant, Inc. v. Pierson, 428 So.2d 995 (La.App. 1st Cir.1983), writ denied, 431 So.2d 773 (La.1983). This case recognizes the rule that legal malpractice actions are normally subject to a one-year prescriptive period of La.C.C. art. 3536, with two exceptions: an express warranty by the attorney, or an agreement by the attorney to do certain work followed by doing nothing. If one of these exceptions is found to have occurred, a ten-year prescriptive period is applicable.
We find nothing in the record to support either of these exceptions. There is no evidence in the depositions or elsewhere in the record that Wall warranted a particular result such as the ultimate legal effect of his work product. Nor is there any evidence that he failed to do the work that he agreed to do. In fact, he did a great deal of legal work.
Aside from the absence of any evidence to support a ten-year prescriptive period, Hannie did not plead facts supporting that prescription; his pleadings sound purely in tort: throughout, the petition and amending petitions alleged negligence. At the trial of the exception, Hannie's argument focused entirely on the cessation of the attorney-client relationship less than a year before the filing of suit. The argument that the ten-year prescriptive period is applicable appears to be an afterthought. We find no merit to it.
The appellant argues next that the suit was filed within one year after the manifestation and realization of the damage sustained by Wall's malpractice. In Louisiana, prescription begins to run in a tort case when actual damages are sustained, and the party sustaining them knows or should have known that they have been sustained. Rayne State Bank and Trust Co. v. National Union Fire Co., 483 So.2d 987 (La.1986).
*1048 It was in late May of 1982, according to Hannie's deposition, that "... they got Ken Wall on the carpet". At this time Hannie knew, his wife knew, and one of his accountants, Charbonnet, knew, that the Popeye's fast food franchises were in serious trouble and that Wall was to blame for that trouble. The corporate minutes of one corporation show that at a meeting on June 3, 1982, at which Hannie was present, the attendees were made aware that the Ole Coach partnership had been seriously mismanaged, and that the Popeye's partnerships needed immediate new management to survive. These minutes also reflect the possibility that criminal offenses were perpetrated in connection with the syndication of the Popeye's partnerships and the use of their funds. At that meeting, a Voting Trust was created, with Hannie as one of its five trustees, for the management of the Popeye's stores and the Ole Coach Inn. Wall's management authority was terminated by the Voting Trust. In the summer of 1982 a suit was filed by nine Ole Coach limited partners. The present suit by Hannie contained allegations of Wall's mismanagement and Hannie's consequent losses regarding the Popeye's stores and the Ole Coach partnership that were well known by him at the latest by the summer of 1982.
With respect to the Place One Apartments, Hannie was the general partner in a syndication put together by Wall. Certain limited partners, sometime prior to August 3, 1981, claimed damages on account of the conduct of Wall. Hannie, as general partner, reached a settlement with these limited partners on August 3, 1981. His present suit claims, as damages, the amount he had to pay out for this settlement. These damages were known to him in August of 1981.
The damages he seeks in the present lawsuit for the legal malpractice in connection with the King Frederick apartments occurred in 1981. He was having to pay expenses then which he would not have had to pay but for Wall's malpractice. He knew of the King Frederick apartments damages in 1981.
The private aircraft was bought in January 1981. Beginning that very year, Hannie was paying expenses, for which he later sought reimbursement in the present lawsuit, which he claimed he would not have had to pay but for Wall's legal malpractice.
Based on Hannie's testimony, the testimony of his wife, and the testimony of Roland Breaux, his longtime accountant, it is apparent that the trial judge did not err in finding that Hannie was aware of the damages that he had sustained at the hands of Wall no later than June 1982.
Hannie's third argument is that prescription for legal malpractice does not begin to run until the attorney-client relationship ends, and that the prescription facts do not prove that that relationship ended more than one year before the suit was filed. He argues that he and Wall continued to share a business relationship (for example, they remained co-obligors on promissory notes) at the time the suit was filed, and even afterwards, and so prescription had not run.
Prescription does not begin to run on a claim between attorney and client until the termination of the attorney-client relationship. Olivier v. National Union Fire Ins. Co., 499 So.2d 1330 (La.App.3d Cir.1986). Hannie's argument in this connection is that Wall's legal work was so inextricably intertwined with his and Hannie's business endeavors, that their legal relationship necessarily would last as long as their business relationship lasted. As an act of Wall illustrating this continuing relationship, Hannie points to a suitability letter dated December 22, 1980, and a handwritten note by Kenneth Wall on the top of that letter, as follows: "3/15/84. Ed [Hannie] will return power of attorney after Jeanette signs a power of attorney. Power of attorney is not included. See Hannie forms." The trial court evidently regarded this note as merely a business contact targeted toward the separation of the two men's business interests, and not evidence of a continuing attorney-client relationship. In our opinion, the trial court was correct in refusing to construe this *1049 incident as evidence of a continuing attorney-client relationship.
The attorney-client relationship ended in June 1982, at the same time that Hannie became aware of the Popeye's stores and Ole Coach Inn damages. There is overwhelming evidence in the record supporting this finding. Hannie testified that when Wall was called on the carpet (May 1982), he lost his confidence in him, he could not recall Wall doing any more work for him, and he wasn't involved with him after that meeting. Hannie wrote a letter on May 30, 1982, requesting the confiscation of his files in the possession of Wall. In January 1983 Hannie retained William Mouton as his attorney. In March 1983, Kenneth Wall filed a lawsuit against Hannie, and others, arising out of the Voting Trust mentioned above. While they remained as unwilling business partners, Hannie and Wall parted company as attorney-client more than a year before the filing of this suit.
All of the findings described above are findings of fact, and our review of this voluminous record reveals no clear error in these findings. The exception of prescription was correctly maintained.

RES JUDICATA
The peremptory exception raising the objection of res judicata is authorized by La. C.C.P. art. 927(2). The essential elements of res judicata are found in La.R.S. 13:4231, as follows:
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
Compromises have a force equal to the authority of things adjudged. La.C.C. art. 3078. A compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on. La. C.C. art. 3071.
In the present case Hannie, the plaintiff, and Hiatt, one of the defendants, executed an instrument on June 7, 1986, titled Mutual Release of All Claims. The instrument is in the record. In this lengthy document, by means of an elaborately constructed rearrangement of their financial dealings, Hannie and Hiatt released and discharged each other, along with their insurers, from any and all claims, demands, suits, actions, etc. "... arising out of any events, circumstances or facts which occurred prior to the date of the execution of this document." The present lawsuit, identified by its docket number in the district court, was specifically described in the release, and New England Insurance Company, as insurer of Hiatt, was specifically mentioned as a person against whom Hannie was releasing any and all liability.
Hiatt performed some of the obligations under the release, but not all of them. On April 27, 1987, nearly a year after the release was executed and performance of its conditions began, Hannie filed a motion, based on the release, for dismissal of the suit against Hiatt, suggesting to the court that all issues in the lawsuit pertaining to Hiatt had been compromised and that the case should be dismissed against him with full prejudice. The court thereupon signed a judgment of dismissal with prejudice.
Hiatt's bankruptcy occurred in July of that year, and it was not long after that that Hannie filed the third supplemental and amending petition naming New England as the liability insurer of Hiatt. This third amending and supplemental petition was the procedural vehicle by means of which Hannie sought to reassert and carry on the claims that he had originally asserted against Hiatt in the original petition, the first amending and supplemental petitions, and the second amending and supplemental petition. He now seeks to recover against New England as the professional liability insurer of Hiatt. Hiatt's obligations under the mutual release signed in 1986 to Hannie were discharged by the bankruptcy court.
New England was not specifically named in the lawsuit as Hiatt's insurer *1050 until the third amending petition. However, the release by Hannie of his malpractice claims against Hiatt, as a matter of law amounted to a release of his professional liability insurer, New England. For res judicata purposes, the insured and the insurer not only share the same quality as parties, but in essence their identities are virtually merged into one, to the extent of the policy limits. Cornish v. Freeman, 451 So.2d 148 (La.App. 1st Cir.), writ denied, 458 So.2d 476 (La.1984). See also Funai v. Air Center, Inc., 499 So.2d 669 (La.App. 3d Cir.1986), and Recard v. Trinity Universal Ins. Co., 503 So.2d 519 (La.App. 3d Cir.), writ granted, dismissed, 506 So.2d 105 (La. 1987).
There is no difficulty in determining that there is an identity of object and an identity of cause between the current demand and the release, and between the current demand and the dismissal with prejudice. This is so because the current action is not just identical to what was released and what was dismissed; it is the same. The current action is what was expressed in the original petition and its first two amending petitions.
The object, or thing demanded, was damages owed Hannie by Hiatt. It is clear that the object of the compromise and the dismissal with prejudice, was identical to the object of the demand (the third amending and supplemental petition which brought New England into the case as the insurer of Hiatt) which gives rise to the plea of res judicata. This is so because the new demand is a mere graft on the original demand which was settled and dismissed. There is no doubt that the compromise and the dismissal intended to affect the entirety of the original demand. To repeat, the new litigation is not merely a replication of the original demand; it stands on the same pleadings.
The cause in the case is legal malpractice. The present demand is founded on the same cause (i.e. the principle giving rise to the rightsee Ditch v. Finkelstein, 399 So.2d 1216 (La.App. 1st Cir.1981)).
Plaintiff has filed no action directly attacking the compromise to have it rescinded, nor has he filed an action of nullity as to the judgment of dismissal with prejudice. Accordingly, both the compromise and the judgment of dismissal with prejudice are valid and subsisting, possessing the authority of the thing adjudged. Both by the authority of the compromise, and the dismissal with prejudice that followed it, this lawsuit has become a thing adjudged, and the exception was properly maintained.
For the above and foregoing reasons, the judgments of the trial court are affirmed.
AFFIRMED.
DOMENGEAUX, C.J., dissents and assigns reasons.
DOMENGEAUX, Chief Judge, dissenting.
I respectfully suggest that the business relationship and the attorney-client relationship between the attorney and Hannie was so intertwined that it is difficult to differentiate between the two. To find that the attorney-client relationship ended in May or June of 1982 is somewhat speculative in view of this confusion. I would overrule the exception of prescription.
Hiatt failed to live up to the compromise referred to in the majority opinion. He went bankrupt. New England should step in his shoes for his defalcation. As Hiatt's professional liability insurer, New England should remain in this suit as a defendant.
I respectfully dissent.