634 So.2d 1340 (1994)
Patty BLACK, Individually and on Behalf of Her Minor Child, Regina Abston, and Jerry Black, Plaintiffs-Appellants,
v.
PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, et al., Defendants-Appellees.
No. 93-878.
Court of Appeal of Louisiana, Third Circuit.
March 2, 1994.
*1342 Gerald Charles deLaunay, Lafayette, for Patty Black etc.
Michael J. Breaux, Lafayette, for Prudential Property & Cas. Ins., et al.
Before GUIDRY, LABORDE and THIBODEAUX, JJ.
GUIDRY, Judge.
This personal injury action stems from a May 3, 1987 automobile accident which occurred on Kaliste Saloom Road in Lafayette. Plaintiff, Patty Black, and her daughter, Regina Abston, were injured when, in attempting a left turn onto Aberdeen Drive, their automobile was struck from the rear by a vehicle driven by defendant, Martin Despot. Black, individually and on behalf of Regina, and her husband Jerry Black, sued Despot, his liability insurer, Prudential Property and Casualty Insurance Company, and their uninsured motorist (UM) carrier, State Farm Mutual Automobile Insurance Company. Prior to trial, the plaintiffs compromised their claims against Despot and Prudential for $65,000, reserving their rights against State Farm.
Some ten days prior to trial, plaintiffs, with leave of court, filed an amended petition reducing the amount demanded from State Farm to $20,000 and then moved the trial court to rescind its prior order granting a jury trial. The trial court denied the motion, and the case proceeded to trial by jury. Because the parties stipulated to liability, the sole issue at trial was damages. After trial, the jury awarded Patty Black total damages as follows:

(1) Physical and mental pain and suffering $10,000
 (past, present, and future)
(2) Past medical expenses 8,200
(3) Future medical expenses -0-[1]
 _______
 TOTAL AWARD $18,200

Because the total jury verdict did not exceed the amount plaintiffs received in settlement with Despot and Prudential, the trial court dismissed plaintiffs' claims against State Farm. Plaintiffs appeal and specify the following as error:
(1) Refusing to strike the jury;
(2) Failing to charge the jury on the weight accorded to a treating physician's testimony;
(3) Failing to adopt a verdict form which distinguishes elements of general damages; and
(4) Awarding inadequate damages.

FACTUAL/MEDICAL HISTORY
This accident occurred around midday as Black and her daughter were returning home from church services. She and Regina did not require and actually declined immediate emergency medical attention. As a precautionary measure, they went to a local hospital emergency room. They were examined, x-rayed, and released by hospital medical personnel.
On May 8, 1987, Black was examined by her family physician, Dr. Barbara Ardoin, a general practitioner specializing in preventive and holistic medicine. Her complaints included pain in the neck and lower back. Dr. Ardoin also observed a shoulder blade bruise. She prescribed a conservative course of treatment. When Black's complaints of pain persisted during subsequent visits on June 11, 1987 and September 14, 1987, Dr. Ardoin referred her to Dr. Daniel Dunlap, a neurologist.
On September 16, 1987, Dr. Dunlap first examined Black and found that her neck movement was mildly limited and she had muscle spasms in her right trapezius. A CT scan of her brain was normal. Dr. Dunlap diagnosed a neck and shoulder muscle strain and a lumbar strain. In response to complaints of right knee pain, Dr. Dunlap referred Black to Dr. James LaFleur, an orthopedic surgeon. Dr. LaFleur first examined Black on October 29, 1987. He diagnosed *1343 patella chrondromalacia, a painful irritation of the knee cap joint surface, secondary to a contusion. He gave her an injection for the pain and prescribed an anti-inflammatory drug. Dr. LaFleur, in deposition, related the cause of Black's knee condition to the accident.
Black saw Dr. Dunlap again on October 13, 1987 with continued complaints of knee pain in addition to radicular right arm pain. Dr. Dunlap referred her to Dr. Daniel Hodges, a physiatrist (specialist in physical and rehabilitative medicine). On January 10, 1988, Dr. Hodges first examined her and diagnosed myofascial neck, shoulder and lumbar pain resulting from a soft tissue or musculature injury. He recommended conservative treatment.
Black returned to Dr. LaFleur on February 4, 1988. He determined that the patella chrondromalacia condition had resolved. However, on this visit, Dr. LaFleur noted pain symptoms in the medial meniscus ligament of her knee. In deposition, he testified that it was improbable that the medial meniscus pain was caused by the accident due to the time delay and the fact that the ligament was not tender when examined during Black's first visit. At a subsequent examination on April 14, 1988, Dr. LaFleur discussed with Black the possibility of performing arthroscopic surgery on her knee. She was undecided on surgery and, later, declined to undergo the procedure.
Black was again seen by Dr. Hodges on February 10, 1988 at which time he noted significant improvement. However, on March 23, 1988, Black complained to him of continuing pain in her right trapezius muscle. He prescribed physical therapy for her neck and lower back and anti-inflammatory medication.
After cancelling six appointments to see Dr. Dunlap over a six month period, Black returned to him on April 13, 1988 and May 25, 1988 complaining of headaches. She claimed to have regularly experienced such headaches since the accident. He noted that physical therapy was helping her neck and knee. Dr. Dunlap did not see Black again after May of 1988.
After a two-year hiatus, Dr. Hodges examined Black on May 25, 1990. He determined that her back was much improved and recommended continued limited physical therapy.
On November 30, 1990, Dr. Michael Heard, an orthopedic surgeon, performed an independent medical examination on Black at the request of Prudential. At the time, she complained of moderate constant pain in her neck, knee and lower back. She was not taking medication. Dr. Heard's examination revealed full range of motion in the neck with tenderness in the center of her neck and right trapezius. No muscle spasms were noted. Black's lumbar area was a little stiff but, overall, Dr. Heard detected no neurological deficit. An x-ray indicated mild degenerative spinal changes which he attributed to "normal wear and tear". He recommended that Black undergo a magnetic resonance imaging (MRI) test and CT scan to determine the cause of her pain.
Nearly one year later, in conjunction with a November 14, 1991 examination, Dr. Hodges ordered a MRI. The test, which was performed on November 21, 1991, revealed a level C4-5 spinal stenosis, a narrowing of the spinal canal, secondary to hypertrophic spurring. In other words, a bony overgrowth was encroaching on the spinal canal at C4-5. Upon reading the radiologists' report interpreting the MRI, Dr. Hodges referred Black to Dr. J. Robert Rivet, a neurosurgeon.
Dr. Rivet examined Black on December 9, 1991. After reviewing the MRI and performing a neurological examination, Dr. Rivet recommended that she undergo a myelogram and CT scan to determine if surgical intervention was warranted. In his deposition, Dr. Rivet stated that, based solely upon the MRI results, it was his opinion that Black's condition predated the accident. However, he also explained that, given her history of post-accident pain complaints, he would have to implicate the accident as causative because of the prior lack of symptoms.
Unsatisfied with Dr. Rivet's assessment and recommendations, Black sought another opinion from Dr. Lloyd Garland, a Lubbock, Texas neurosurgeon, on December 23, 1991. He reviewed the November 21, 1991 MRI *1344 and performed a neurological evaluation. Dr. Garland diagnosed cervical disc disease but did not recommend that Black undergo a myelogram and a CT scan.
On January 30, 1992, Black once again returned to Dr. Hodges. He advised her to follow Dr. Rivet's recommendation to have a myelogram and CT scan performed. In his deposition, he explained that, while he was not an advocate of surgery, he felt that, given Black's constant and continuing pain complaints, it was advisable that she undergo these diagnostic tests. Thereafter, if surgery was indicated as necessary, he would advise that it be performed.
On February 5, 1992, Black sought the opinion of a third neurosurgeon, Dr. Alfonso Aldama of Houston, Texas. He diagnosed cervical spondylosis and ordered another cervical MRI, which revealed mild radicular compression and bulging at C4-5, 5-6 with a shallow spinal canal at these levels. Dr. Aldama recommended a myelogram and CT scan to assess the effects of the stenosis on the spinal cord. Based on the results of these proposed diagnostic tests, he would decide whether surgery was necessary. As of the date of trial, Black had not undergone a myelogram and a CT scan. In his report, Dr. Aldama noted that, while the spinal changes are mild, her condition could be serious if she is involved in a traumatic accident.
Black testified that, despite temporary and occasional relief from physical therapy, her pain has tended to be continuous since the 1987 accident. Her knee pain is now resolved. Black testified that the physical therapist told her that she would have to perform flexibility exercises for her neck and back for the rest of her life in order to alleviate the pain. She stated that she desired to have the cervical bone spur removal surgery which Dr. Aldama felt would be advisable after he performed a myelogram and a CT scan.
Black further stated that she missed only one full day of work because of the accident. Her total pharmaceutical expenses were approximately $50. Since the accident, driving or traveling in a car exacerbates her pain and she must take frequent breaks in order to walk off the stiffness. Her favorite hobby, horseback riding, had to be curtailed because of the pain and the possibility of further injury.

JURY TRIAL
Plaintiffs originally sued Despot, Prudential and State Farm on April 14, 1988 seeking damages totaling $665,000. Plaintiffs requested a jury trial. Despot and Prudential answered the suit on October 3, 1988 and requested a jury trial. Thereafter, on December 11, 1991, State Farm filed an answer generally denying the allegations of plaintiffs' petition and requested a jury trial. The trial court issued an order setting a trial by jury in response to State Farm's request, contingent upon State Farm posting a $2,500 bond. Plaintiffs compromised their claims against Despot and Prudential for $65,000. Then, on November 23, 1992, ten days prior to trial, plaintiffs, with leave of court, reduced their demand against State Farm and moved to strike the jury.
Black urges that, because she reduced her monetary demand against State Farm below the $20,000 jurisdictional threshold, the trial court erred in denying her motion to exclude the jury.
Pursuant to La.C.C.P. art. 1732(1), a jury trial is not available in "a suit where the amount of no individual petitioner's cause of action exceeds twenty thousand dollars exclusive of interest and costs". The right to a jury trial depends on the good faith amount in dispute, not necessarily on the amount initially demanded by plaintiff. When the good faith amount in dispute exceeds $20,000, the plaintiff should not be able to reduce the initial demand to $20,000 or less solely to prevent the defendant from having a jury trial. Cambridge Corner Corp. v. Menard, 525 So.2d 527 (La.1988). Procedural maneuvers designed solely for the purpose of depriving a litigant of a right to a jury trial based on the jurisdictional amount are disfavored. Boone v. Louisiana Farm Bureau Casualty Insurance Co., 521 So.2d 548 (La. App. 3rd Cir.1988), writ denied, 531 So.2d 467 (La.1988).
*1345 In Boone, the plaintiff originally sought $75,000 and demanded a jury trial. Shortly before trial, she reduced her demand to $19,832.20 and moved to strike the jury. The trial court granted her motion and, subsequently, denied defendant's timely motion for a jury trial. Defendant then applied for supervisory writs. This court, in a per curiam opinion, concluded that, by moving to withdraw her jury trial demand, plaintiff effectuated "... a procedural maneuver designed to deprive the defendants of a trial by jury ..." which caused prejudice to defendants. Boone, supra, at 549.
In Thibert v. Smith, 560 So.2d 553 (La. App. 1st Cir.1990), the court was faced with a similar procedural scenario as in the present case. Thibert, a minor, was a guest passenger in Smith's automobile which was involved in an accident. He sued Smith, Smith's insurer, and State Farm, his mother's UM insurer, seeking over $300,000 in damages. Plaintiff settled with Smith and his insurer and reserved his rights against State Farm. Thibert then moved to amend his petition ostensibly to reduce the amount demanded below the jury trial threshold. State Farm requested a jury trial, which the trial court denied. On appeal, the First Circuit ruled that the "amount in dispute" is the amount of UM coverage that plaintiff can potentially recover. In the case sub judice, that amount is $25,000, which is $5,000 above the jurisdictional threshhold.
We recognize that this court in Recard v. Trinity Universal Insurance Co., 503 So.2d 519 (La.App. 3rd Cir.1987), writ granted, 506 So.2d 105 (La.1987), case dismissed on joint motion, 509 So.2d 1011 (La.1987), an opinion rendered prior to the Louisiana Supreme Court's decision in Cambridge Corner Corp., supra, reached a contrary result than that of Boone, supra. Recard involved three suits consolidated for trial, two of which were tried to a judge and one which was tried to a jury. Recard sued four defendants seeking $250,000 in damages resulting from an automobile accident. Three defendants, in answering, requested a jury trial. On the day of trial, Recard, with the court's leave, reduced his claim to $9,999.99. The trial court rescinded its jury trial order and, after trial, rendered judgment in favor of Recard as prayed for ($9,999.99), plus interest and costs. Defendants appealed. In recognizing that the right to a jury trial is dependent upon the good faith amount in dispute, this court, considering the particular facts of that case, held that the plaintiff's amended demand was more in line with his actual damages than his grossly inflated $250,000 original demand. Accordingly, we found no error in the trial court's rescission of its jury trial order.
Considering the particular facts of this case in light of these legal principles, we conclude that the trial court did not err in denying Black's request to exclude the jury. Black could potentially have recovered $25,000 from State Farm under her UM coverage. This could reasonably be considered the good faith amount in dispute. The only change made by way of the amended petition was a reduction in the amount demanded to $20,000. Clearly, the sole purpose of Black's amended petition was to deny State Farm its right to trial by jury. All parties to this action had previously requested a jury trial. Then, ten days prior to trial (and over five years after the accident), Black amended her petition to get her suit below the jurisdictional threshold for jury trials. This procedural maneuver was not in good faith and was designed solely to prejudice State Farm by denying its right to trial by jury. For these reasons, the trial court did not err in denying plaintiffs' motion to exclude the jury.

JURY INSTRUCTION
Plaintiffs next assign as error the trial court's refusal to charge the jury on the weight to be accorded to the testimony of a treating physician. Specifically, plaintiffs specially requested the jury be instructed on the following rule of law:
The testimony of an attending (treating) physician should be accorded more weight than that of a physician who has made an examination solely for the purpose of giving expert testimony regarding a patient's condition. Streeter v. Sears, Roebuck, and Co., 533 So.2d 54 (La.App. 3rd Cir.1988), writ denied, 536 So.2d 1255 (La.1989).
The trial judge apparently refused to give this instruction to the jury because of the *1346 relatively large number (eight) of doctors who had examined Black in the five and one-half year period since the accident. The court accepted State Farm's argument that Black did not see one particular doctor with sufficient regularity such that a physician's testimony should be accorded greater weight. The trial court, instead, charged the jury as follows:
I have mentioned to you that witnesses are expected to testify about facts within their knowledge. Expert witnesses are people who by their education and experience have become expert in some field and are permitted to state their opinions as to relevant matters in the fields in which they profess to be expert and give their reasons for those opinions. You should consider each expert opinion received into evidence in this case and give it such weight as you may think it deserves. If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel it is outweighed by other evidence, you may disregard the opinion entirely.
A party may file written requests that the court instruct the jury on law as set forth therein. La.C.C.P. art. 1793(A). After trial, the court is required to instruct jurors on the law applicable to the case submitted for their decision. La.C.C.P. art. 1792(B).
In Doyle v. Picadilly Cafeterias, 576 So.2d 1143, 1152 (La.App. 3rd Cir.1991), this court reasoned:
Adequate jury instructions are those which fairly and reasonably point up the issues and which provide correct principles of law for the jury to apply to those issues. The adequacy of jury instructions must be determined in light of the jury instructions as a whole. Evangeline Farmers Cooperative v. Fontenot, 565 So.2d 1040 (La.App. 3rd Cir.1990); Kaplan v. Missouri-Pacific Railroad Co., 409 So.2d 298 (La.App. 3rd Cir.1981). The trial judge is under no obligation to give any specific jury instructions that may be submitted by either party; he must, however, correctly charge the jury. Oatis v. Catalytic, Inc., 433 So.2d 328 (La.App. 3rd Cir.), writ denied, 441 So.2d 210, 215 (La.1983). An appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the instructions were so erroneous as to be prejudicial. Cuccia v. Cabrejo, 429 So.2d 232 (La.App. 5th Cir.), writ denied, 434 So.2d 1097 (La.1983).
See also Nunez v. Wainoco Oil and Gas Co., 606 So.2d 1320 (La.App. 3rd Cir.1992), writ denied, 608 So.2d 1010 (La.1992), wherein this court stated that the trial court's obligation is to give instructions that properly reflect the law applicable in light of the pleadings and the facts of each case.
Considering the facts of the case sub judice, it is apparent that Black did not have a treating physician. She saw Dr. Ardoin, a general practitioner, and Dr. Hodges, a physiatrist, six times each. However, neither physician was consulted with sufficient regularity to be considered her "treating physician". She saw Dr. Ardoin for the last time in June, 1989, one year after her previous visit, and three and one-half years prior to trial. Additionally, during one period, she waited over two years between visits to Dr. Hodges. Given these circumstances, it is clear that the instruction sought by plaintiffs is not applicable to this case considering the facts adduced at trial. The omission of the instruction was not error.

VERDICT FORM
Plaintiffs next complain that the trial court erred in not splitting the pain and suffering special jury verdict interrogatory into its separate "mental" and "physical" elements. Also, they urge that it should have been separated into "past" and "future" pain and suffering.
La.C.C.P. art. 1812(C) provides, in pertinent part:
In cases to recover damages for injury, death, or loss, the court may submit to the jury special written questions inquiring as to:
* * * * * *
(4) The total amount of damages sustained as a result of the injury, death, or loss, expressed in dollars. (Emphasis added)
*1347 The trial court has discretion to decide whether to submit special interrogatories to a jury, which are helpful to the jury and an aid to appellate review. Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281 (La.1984). The trial court also has broad discretion in the framing of jury interrogatories. Bell v. Vickers, 568 So.2d 160 (La.App. 2d Cir.1990).
Under the circumstances of this case, we cannot say that the trial court's framing of all "pain and suffering" damages into one all-inclusive special interrogatory was error. The court did not abuse its broad discretion.

QUANTUM
Plaintiff contends that the amount of damages awarded by the jury was inadequate and an abuse of discretion. The trier of fact has much discretion in awarding damages, and an appellate court cannot disturb the trier's award absent an abuse of discretion. Boswell v. Roy O. Martin Lumber Co., Inc., 363 So.2d 506 (La.1978); Jenkins v. Kerr-McGee Corp., 613 So.2d 1097 (La.App. 3rd Cir.1993), writs denied, 616 So.2d 701, 702 (La.1993).
The jury awarded $10,000 in pain and suffering and $8,200 in past medical expenses. Black suffered patella chrondromalacia which resolved itself within nine months of the accident. Additionally, she suffered a mild neck and lower back soft tissue injury or muscle strain. While it is true that the total amount of past medical expenses incurred was $8,957.43, the jury could reasonably have determined that, as argued by defense counsel, the treatment for her medial meniscus knee ligament by Dr. LaFleur was unrelated to the accident. Further, the medical expenses incurred reflect the number of physicians seen and the multiple diagnostic tests performed during the five year period prior to trial. Faced with conflicting expert testimony, the jury could reasonably have concluded that the automobile accident did not cause plaintiff's cervical bone spurring or spinal stenosis and that plaintiff only suffered a minor soft tissue injury and a knee injury which was resolved nine months post accident. Under these circumstances, the trier of fact did not abuse its wide discretion in awarding damages.
For the above reasons, the judgment of the trial court in favor of State Farm is affirmed. All costs are assessed to plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Larry Black's loss of consortium claim and Regina Abston's claim for damages were abandoned prior to trial.