168 So.2d 426 (1964)
Julian EAST et al., Plaintiffs and Appellees,
v.
PAN AMERICAN PETROLEUM CORPORATION, Defendant and Appellant.
No. 1247.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1964.
*427 Liskow & Lewis, by Richard E. Gerard, Lake Charles, for defendant-appellant.
Jones & Jones, by Jerry G. Jones, Cameron, for plaintiffs-appellees.
Before CULPEPPER, FRUGÉ and HOOD, JJ.
HOOD, Judge.
This is a suit for damages to plaintiffs' marshland caused by the excavation of dirt therefrom to build a "board road" to an oil well site on adjacent land. After trial on the merits, the district judge awarded plaintiffs $5,217.00. Defendant appealed. Plaintiffs answered the appeal seeking an increase in the award.
The general facts show that plaintiffs own a long narrow strip of marshland containing approximately 38 acres. It has a "front" of about 340 feet on the south side of Grand Chenier Ridge and extends back about one mile in a southerly direction toward the Gulf of Mexico. Except for potential mineral development, the land is useful only for trapping, hunting and cattle grazing. Plaintiffs' property is bound on the west and south by a large tract of marshland owned by Dr. Martin O. Miller. The defendant, Pan American Petroleum Corporation, owned oil, gas and mineral leases covering plaintiffs' land, as well as that of Dr. Miller. In 1961 defendant decided to drill a well on the Miller property at a location approximately 400 feet south of the south end of plaintiffs' property. The Miller lease contained a provision that any canals dug, or roads built, for mineral operations on the leased premises, would be as nearly as possible along section lines, or along boundaries of the Miller property, in a north-south direction. With the intention of complying with this provision of the Miller lease, defendant constructed the board road in question to the well site. The road extended from Grand Chenier Ridge back in a southerly direction along what defendant thought to be the west boundary line of plaintiffs' property.
Several months after the well was drilled the present dispute arose. Plaintiffs contend that in constructing the dump for the board road to the Miller well, defendant excavated a canal which encroaches on the west edge of plaintiffs' property. The encroachment alleged is a triangle with a base on the south of 61 feet, a heighth of 3,960 feet and containing 2.73 surface acres. Plaintiffs contend 13,996 cubic yards of dirt were taken from their land and used to build the road on Dr. Miller's property.
The first issue is whether defendant actually excavated any soil from plaintiffs' land. Three qualified surveyors testified. *428 Mr. Fred N. Shutts, a witness for the plaintiffs, found the encroachment to have a base of 61 feet, a heighth of 3,960 feet and a total of 2.73 acres. Mr. George Bailey, also a witness for the plaintiffs, found the triangular encroachment to have a base of 58 feet and a heighth of 3,960 feet for a total of 2.63 acres. Mr. Paul John Letz, a witness for defendant, found the encroachment to have a base of 7.3 feet, a heighth of 600 feet and an area of .17 of an acre.
In a very detailed and well reasoned opinion, the district judge, who obviously knows the area well and has a good personal understanding of the surveying problems involved, has accepted the Shutts survey as correct. The evidence fully supports this finding of fact by the trial judge. We accept as our own the following portion of his written reasons:
"Thus, the disputed surveys gave rise to this cause of action. The testimony of the three engineers was lengthy and very detail as to how they approached the conclusions that they reached. Without going into the details of the explanation given by each of the engineers, it is sufficient to say that the problems presented to surveys in this area is a common problem due to the particular type of terrain which composes the majority of this area. This area is practically entirely marshland and remains swampy and partially inundated at all times and these circumstances obviously existed when the original Government surveys were made resulting in what is known as overages in many sections. This condition also explains the difficulty in locating the early markers and corner posts of this area. For instance, as was explained by one of the engineers, in those early days the surveys were conducted with a chain, the continued use of which would wear the links to the extent that the chain would lose its accuracy for length and would require adjusting or cutting at certain times. This variation in chain length accumulated in overage measurements thereby giving resulting survey problems for any future survey. As we weigh the testimony of these engineers, all of whom are competent men, we must give greater weight to those who have had greater experience with these peculiar problems. Approaching the evidence from this standpoint, this Court reaches the conclusion that the survey, conducted by Mr. Fred N. Shutts who has been working this area for many years, is well acquainted with the property and the problems presented by the original Government surveys. His survey was confirmed by the survey of George Bailey which gives substantial weight to the conclusion reached by Mr. Shutts and under those circumstances the Court concludes that Mr. Shutts' survey is the survey that will be accepted as being the correct version of the location of the west boundary of the subject property."
The next defense urged is that the lease owned by defendant covering plaintiffs' land gave lessee the right to excavate and use this dirt. The lease provides in pertinent part that the lessee has the right: "* * * to construct, maintain and use roads, pipelines and/or canals thereon for operations hereunder or in connection with similar operations on adjoining lands." (Emphasis added)
In the case of Rohner v. Austral Oil Exploration Company, Inc., 104 So.2d 253 (1st Cir.App. 1958) plaintiff sued for destruction of productivity of 4 acres of land at the well site, damage to corn and watermelon crops and damage to a fence, caused by defendant's drilling operations on plaintiff's land. The court denied recovery for destruction of productivity of the 4 acres at the well site, finding that the defendant had done nothing more than what was ordinary, customary and necessary in the drilling operations, which it had a right to conduct. However, the court did allow recovery for damages to the watermelon and corn crops, *429 as well as the fences, on the grounds that this was not ordinary, customary or necessary or incident to the operations permitted under the lease contract. The court interpreted mineral lease provisions similar to those in the present case as meaning that the lessee's use of the surface rights is subject to the requirement that its acts be ordinary, customary, reasonable and necessary in connection with the mineral operations.
Applying the rule of the Rohner case, it is clear that the acts of Pan American Petroleum Corporation in excavating a large amount of dirt from the East property, in order to construct a road on the Miller land, was neither necessary nor reasonable. The excavation could just as well have been made from the Miller property. Furthermore, we think it unreasonable and not within the intent of the parties to this lease that dirt could be removed from the leased premises in order to construct a road to a well being drilled on adjoining property. Actually, the only reason the excavation was made from plaintiffs' property was that defendant was in error as to the location of the boundary line. This would indicate that defendant itself did not consider it reasonable or necessary to excavate dirt from plaintiffs' property.
The final issue is the measure of damages which is applicable under the facts of this case. At the outset we point out that the trial judge has correctly found as a fact "the defendant's employees were in good faith and believed that they were not encroaching upon the property of the plaintiffs at the time this excavation was done. Since the defendant, through its employees, was in good faith, the damages will be assessed according to the rules applicable thereto."
It is settled in Louisiana that a person against whom an offense or quasi offense has been committed may recover compensatory damages only. Franklin v. Arkansas Fuel Oil Co., 218 La. 987, 51 So.2d 600; Angelloz v. Humble Oil & Refining Co., 196 La. 604, 199 So. 656; and LeBleu v. Vacuum Oil Co., 1 Cir., 15 La.App. 689, 132 So. 233.
In this action plaintiffs contend that the measure of damages should be either the cost of restoring the property to its original condition or the value of the fill dirt which was removed from their property. In support of these arguments they cite Hebert v. T. L. James & Co., La.App. 1 Cir., 72 So.2d 754; Aleman v. Sewerage & Water Board of New Orleans, 196 La. 428, 199 So. 380; Kotteman Furniture Co. v. McLellan, La. App.Orl., 2 So.2d 485; Shell Petroleum Corp. v. Scully, 4 Cir., 71 F.2d 772; and Juncker v. T. L. James Co., La.App. 4 Cir., 148 So.2d 795.
Defendant contends that, if there is any liability on its part at all, it is responsible to plaintiffs only for: (1) the value of the right taken (citing Holcombe v. Superior Oil Company, 213 La. 684, 35 So.2d 457); or (2) the value of that part of the surface of the land which was utilized (Greenberg v. New Orleans Public Services, Inc., 74 So.2d 771); or (3) the value in place of the materials excavated (DeHart v. Continental Land & Fur Company, 205 La. 569, 17 So.2d 827); or (4) the difference between the market value of the plaintiffs' 38-acre tract before defendant built the road fill and its value after the construction work had been completed (citing McCoy v. Arkansas Natural Gas Company, 184 La. 101, 165 So. 632; and 25 C.J.S. Damages § 84).
The evidence is conflicting as to what it would cost to refill this 3960-foot canal or borrow pit on plaintiffs' land. Plaintiffs contend it would cost approximately $50,000.00, while defendant contends that it could be re-filled for about $1,350.00. There is a substantial difference of opinion among the witnesses who testified as to the value of fill dirt in that area, and there is a dispute as to whether the values expressed by them related to marsh dirt, as was used by defendant here, or whether they applied only to highland or ridge dirt. Defendant contends that evidence as to the market value of dirt in that area is not applicable here, because *430 a purchaser would have difficulty in crossing the marsh in order to obtain access to the dirt on plaintiffs' property, while plaintiffs contend that this evidence is pertinent because the dirt was readily accessible to defendant for constructing this particular road fill.
The trial judge concluded that plaintiffs were entitled to recover the market value of the dirt removed from their land, less the expenses which would have to be incurred in making the dirt available to a prospective purchaser. Using that method of computing the damages, he concluded that plaintiffs were entitled to an award of $5,217.00.
We think the law is correctly stated in 15 Am.Jur. 515, verbo, Damages, Sec. 107, as follows:
"One whose real property is injured by another's wrongful and negligent act is entitled to such damages as will compensate him for the injury or loss sustained. No hard and fast rule can be laid down, however, for the measurement of those damages; whatever rule is best suited to determine the amount of the loss in the particular case should be adopted."
Also, in the assessment of damages in cases involving offenses and quasi offenses much discretion must be left to the trial judge or jury. LSA-R.C.C. Art. 1934; Angelloz v. Humble Oil & Refining Company, supra; and Holcombe v. Superior Oil Company, supra.
In view of the peculiar circumstances presented in the instant suit, and since no hard and fast rule can be laid down for the measurement of damages in a case of this kind, we cannot say that the trial judge erred in concluding that the measure of damages should be based on the value of the fill dirt removed from plaintiffs' land. The expenses which would have to be incurred in removing that dirt are factors which should be considered in determining the true market value of that dirt.
While we feel that the evidence shows the market value of the dirt removed to be somewhat less than that found by the trial judge, we also find that the trial court erred in concluding that it would be necessary for a mile of roadway to be constructed in order to provide access to the quantity of dirt which was removed from plaintiffs' land, and thus the expenses deducted by the court were excessive.
After considering all of the evidence, we conclude that the trial judge did not abuse the discretion vested in him in awarding plaintiffs the sum of $5,217.00 as damages resulting from this trespass. In our opinion this award fairly and adequately compensates plaintiffs for the damages which they sustained.
For the reasons assigned, therefore, the judgment appealed from is affirmed. All costs of this appeal are assessed to the defendant-appellant.
Affirmed.