John Burton PRATHER

v.

CHEVRON U.S.A., INC.

Civ. A. No. 82–106–B.

United States District Court,
M.D. Louisiana.

June 7, 1983.

Charles R. Browning, Livonia, La., Frank H. Dickinson, III, Baton Rouge, La., for plaintiff.

Richard House, Jr., Charles A. Kiger, New Orleans, La., for defendant.

POLOZOLA, District Judge.

This matter is before the Court on the motion of Chevron U.S.A., Inc. (Chevron) for a partial summary judgment. No oral argument is required on this motion.

The plaintiff, John B. Prather, filed this suit to recover property damages allegedly sustained as a result of the defendant's operation of a gas well on plaintiff's land. In his complaint, plaintiff sued for four items of damage: 1) the cost of timber removed by Chevron; 2) the loss of the use of some 27.5 acres of crop land; 3) the value of dirt used by Chevron for the construction of the well site; and 4) the value of a pipeline servitude. The plaintiff's claim for the value of the pipeline servitude was dismissed by the Court on June 30, 1982. Chevron now seeks the dismissal of Prather's claim for the value of dirt used at the drilling site.

It is undisputed that Prather owns the land upon which Chevron's well is situated. His ownership is, however, subject to a mineral servitude reserved by the previous owners of the land. The reservation of the mineral servitude provides, in part:

"Sellers expressly reserve and exclude from this conveyance all of the oil, gas and other minerals in and under and that may be produced from the property sold, together with all rights or [sic] ingress and egress on and over the property incidental to the exercise of the right to such minerals, and the right to explore, conduct operations, drill for, and produce any and all minerals that may be discovered which rights may be exercised by Sellers, or their Lessees or Agents. The only obligation of Sellers in connection with the exercise of their rights to the minerals shall be to pay the landowner for

damage to crops, standing timber, fences, ditches, and other improvements on the property that actually result from the exercise of these rights, but not for any loss of profit to the owner."

The lease obtained by Chevron grants Chevron the

"exclusive right to enter upon and use the land hereinafter described for the exploration for, and production of oil, gas, sulphur and all other minerals, together with the use of the surface of the land and for all purposes incident to the exploration for and production, * * * and transportation of said minerals * * * with the right of ingress and egress to and from said lands at all times for such purposes, including the right to construct, maintain and use roads, * * *."

The lease further provides:

"Lessee shall be responsible for all surface damages to the land, buildings, crops, roads, irrigation wells and other improvements thereon, caused by its activities or operations hereunder, and lessee shall restore the surface of the land as near as practicable, to its original condition following cessation of operations thereon, if any."

The plaintiff admits that Chevron only used the amount of dirt necessary for the construction of its gas production facilities. (Deposition of John Prather, p. 33.)

The issue presented for decision, therefore, is whether, as a matter of law, Chevron's mineral lease gives it the right to use the landowner's dirt to build up the wellsite as long as the property is eventually returned to its original condition.

Chevron contends that since no dirt was unnecessarily used or taken from the site, the plaintiff's claim is limited to the right to demand that the surface be returned as near as practicable to its original condition when production is terminated. The Court agrees with Chevron's contention.

Since this is a diversity action, the Court must apply Louisiana law. It appears that the issue before the Court has not been directly addressed by the Louisiana courts.

The only case cited by the parties or found by the Court in which a claim has been made against a mineral lessee for the value of dirt used is *East v. Pan American Petroleum Corporation*, 168 So.2d 426 (La.App. 3rd Cir.1964). In that case, the mineral lessee had the right under the lease to construct roads over the plaintiff's land in connection with operations on adjoining lands. Due to an incorrect survey of the boundary, the lessee mistakenly dug a canal on the plaintiff's land to provide dirt for a road on adjoining land. The Court found that the excavation of a large amount of dirt from the plaintiff's property to construct a road on the adjoining land was outside the intent of the parties and neither reasonable nor necessary under the lease. The Court's decision was based in part on a finding that the dirt could have as easily been taken from the adjoining land without disturbing the plaintiff's property. The Court fixed damages at the market value of the dirt removed.

The Court's finding in the *East* case that the dirt could have been taken from the land where the road was situated implies that such a taking would have been within the terms of the lease. It is on this point that the instant case may be distinguished from *East*.

Drilling wells for oil and gas production requires that the surface of the land be disturbed to some degree. For this reason, the Louisiana Mineral Code requires that mineral owners exercise their rights to use the surface reasonably. La.R.S. 31:11 and 31:22. Digging pits by lessees is a common practice in drilling operations. Such a pit was dug by the defendant in this case. In his deposition, the plaintiff testified that pits were dug to raise the wellsite (Prather depo. p. 37) and that no excessive or unnecessary amount of dirt was used by the defendant (Prather depo. p. 33).

While numerous Louisiana cases have discussed damages for a mineral lessee's failure to fill pits at the conclusion of operations, *Smith v. Schuster*, 66 So.2d 430 (La. App. 2nd Cir.1953); *Rohner v. Austral Oil Exploration Co.*, 104 So.2d 253 (La.App. 1st

Cir.1958); *Roy O. Martin Lumber Co., Inc. v. Pan American Petroleum Corp.,* 177 So.2d 153 (La.App. 3rd Cir.1965); *Broussard v. Waterbury,* 346 So.2d 1342 (La.App. 3rd Cir.1977); *Clement v. Marion Corp.,* 398 So.2d 130 (La.App. 3rd Cir.1981), no case has been cited in which damages were imposed for dirt removed when pits were dug *during* the ordinary course of drilling operations. Under the existing mineral code and the mineral lease involved in this case, the defendant is permitted to move dirt in order to dig pits at the drilling site. It follows that the defendant may use such dirt from the pits to build up the wellsite without paying for this dirt.

In summary, the plaintiff has not demonstrated a genuine issue, in opposition to Chevron's motion, as to the reasonableness of Chevron's use of the plaintiff's dirt for the construction of the wellsite and access road.

It is clear that Chevron does have a duty under the lease and Article 22 of the Louisiana Mineral Code, La.R.S. 31:22, to restore the property to its original condition insofar as practicable. Furthermore, the lease requires Chevron to pay for damages to the surface. Neither of these obligations, however, requires the mineral lessee to pay for dirt moved about on the surface, as long as that use is reasonable. Therefore, Chevron's motion for a partial summary judgment must be granted.

IT IS ORDERED that the motion of Chevron U.S.A., Inc. for partial summary judgment be and it is hereby GRANTED.

IT IS FURTHER ORDERED that the plaintiff's complaint be DISMISSED IN PART insofar as it asserts a claim for the value of dirt used by Chevron in the construction of its wellsite.