606 So.2d 1320 (1992)
Adam G. NUNEZ, Plaintiff-Appellant,
v.
WAINOCO OIL AND GAS COMPANY, et al., Defendants-Appellees.
No. 91-532.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1992.
Writ Denied November 30, 1992.
*1322 Adam G. Nunez, Sulphur, for plaintiff/appellant.
Jones, Jones & Alexander, Jerry Jones, Cameron, for defendant/appellee Williams Exploration.
Liskow & Lewis, Lawrence Simon, Lafayette, for defendants/appellees.
Before STOKER, KNOLL and MARCANTEL,[*] JJ.
BERNARD N. MARCANTEL, Judge Pro Tem.
The issues presented by this appeal are (1) whether the trial judge gave proper jury instructions; (2) whether defendants were entitled to utilize plaintiff's land in the unit operations of an oil well; (3) whether the jury was correct in finding that plaintiff had suffered no damages; and, (4) whether the trial judge was correct in granting defendants' Motion for Judgment Notwithstanding the Verdict.

FACTS
This case is a companion case to the Supreme Court decision, Nunez v. Wainoco Oil & Gas Co., 488 So.2d 955 (La.1986), appeal dismissed, cert. den., 479 U.S. 925, 107 S.Ct. 391, 93 L.Ed.2d 345 (1986), which held that the intrusion into the subsurface two miles beneath the tract owned by Adam G. Nunez (hereinafter plaintiff) was an authorized unit operation. The Supreme Court has previously set forth the facts in that case and we reiterate those facts which are pertinent to the present case on appeal.
"On July 8, 1980, R.T. Sutton, the Commissioner of Conservation at that time, signed Order Nos. 1095 and 1016-B-2 to establish rules and regulations in the creation of three drilling and production units for the Lower Abbeville A Sand, Reservoir A, in the West Cameron Block 10 Field and Ocean View Beach Field, Cameron, Louisiana. * * * These orders followed a public hearing during which the geology of the area was discussed with regard to varying proposals for the creation of units as well as the optimum location for drilling wells within the units. * * * At the hearing, it was established that the highest structural position within Sand Unit F, and therefore the optimum position for location of the well which would be drilled within Sand Unit F, was in the western portion of the 350 acre unit and included the area of a small unleased tract owned by plaintiff, Adam Nunez. Although Wainoco Oil Company, which had begun exploring the Lower Abbeville A sand in 1977, had leased several tracts within Sand Unit F, the company had not acquired a lease on the Nunez tract. In declining to lease his land, Adam Nunez had opted to bear personally the financial risk of paying his share of drilling in return for the right to recover 100% of the production attributable to his tract's participation in the unit, rather than just a fractional royalty interest.
On August 25, 1980, Wainoco filed an application with the Office of Conservation to drill the R.R. Stone No. 1 well within the surface boundaries of the recently created unit. The permit was granted on September 23, 1980. Although Wainoco proposed to drill on the Stone tract on which they possessed a lease, the company contacted all owners in Sand Unit F prior to commencing operations to offer insurance coverage for the drilling and to submit an authority for expenditure setting forth the anticipated *1323 cost of drilling. All owners, including plaintiff Adam Nunez, agreed to advance proportionate shares of the costs for the Stone well.
* * * * * *
The location of the Stone well, according to the original permit, was in accordance with the optimum position for the Sand unit F well as determined by the pre-unitization public hearing. * * * The actual location of the well, also considered an optimum location, was one foot farther north and 22 feet to the west of the permitted site, which placed it approximately 20 feet from a boundary of the Nunez tract. (It should be noted that the proximity of either site to Nunez property would have violated Order No. 29-E and prevented production should a unit not have been created.) Allegedly, the movement of the well was prompted by the proximity of the Boudreaux residence. * * * The drilling permit was not amended, however, until February 11, 1982, to reflect the well's actual location. * * *
* * * * * *
Before the well could be completed and production begun, it was necessary that it be designated the unit well for Sand Unit F, which as noted earlier had been created on July 8, 1980 by Order Nos. 1095 and 1016-B-2. Consequently, after determining that the well could be produced from the unitized sand, Wainoco applied to the Department of Conservation to amend the well name from R.R. Stone to L ABB A RA SUF, Stone No. 1. An amended permit was issued on December 8, and on December 23, 1980, the well was completed. It thereupon began producing as the unit well for Sand Unit F. * * * " (Footnotes omitted.)
Nunez, supra, at pages 956-958.
On October 14, 1981, plaintiff filed suit in the Thirty-eighth Judicial District Court, Parish of Cameron, against Wainoco Oil Company (hereinafter Wainoco) and other owners within Sand Unit F. He alleged that the Stone No. 1 well was located on or immediately adjacent to his property and the mud pit, ring levee, water pit, water well, machinery, pipe, board road, derrick and other equipment necessary for drilling were located on his property and that this constituted a trespass. Plaintiff also claimed that the chemicals and drilling mud were placed on his property.
Defendants filed exceptions claiming that there was improper venue, lack of jurisdiction over the subject matter, and nonjoinder of the Commissioner of Conservation as a defendant. On November 19, 1986, the trial court overruled the exceptions. Defendants answered plaintiff's petition denying that they owed any liability to plaintiff.
A trial was conducted before a jury on May 22-31, 1989. The jury found that plaintiff had given implied permission to Wainoco to utilize his land in the drilling of the Stone No. 1 well and that it was necessary for Wainoco to utilize the surface of plaintiff's property in order to comply with the orders of the Commissioner of Conservation. The jury also found that plaintiff's land was not in need of further restoration. Additionally, the jury found that an implied contract existed between plaintiff and defendants for rental and awarded $57,000.00 as rent. A formal written judgment was signed on October 12, 1989.
Defendants filed a Motion for Judgment Notwithstanding Verdict and/or for New Trial on October 21, 1989, claiming that the jury's finding of an implied contract for rent between the parties was contrary to both the law and the evidence. Plaintiff also filed a Motion for Judgment Notwithstanding Verdict and/or for a New Trial on December 5, 1989. Plaintiff's motion was dismissed because it was not timely filed. The trial judge granted defendants' Motion for Judgment Notwithstanding Verdict, finding that the evidence presented did not show that there was a contract between the parties and, also, the jury's determinations that the defendants were within their *1324 rights to continue operations on the Stone No. 1 well was inconsistent with its finding that there was a rental contract entered into after the fact. A formal written judgment was signed on January 23, 1991.
It is from these two judgments that plaintiff has appealed.

JURY INSTRUCTIONS
Plaintiff contends that the trial court erred in a number of the instructions to the jury, including the burden of proof instruction.
La.C.C.P. art. 1793 states:
"A. At the close of the evidence, or at such earlier time as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests.
B. The court shall inform the parties of its proposed action on the written requests and shall also inform the parties of the instructions it intends to give to the jury at the close of the evidence within a reasonable time prior to their arguments to the jury.
C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection. If he objects prior to the time the jury retires, he shall be given an opportunity to make the objection out of the hearing of the jury."
A review of the record shows that plaintiff only objected to four of the jury instructions. Plaintiff has assigned as error three of these instructions because the trial judge corrected one of the instructions as requested by plaintiff. Therefore, we will only consider those assignments of error on the jury instructions to which plaintiff objected after the jury retired as required by La.C.C.P. art. 1793. Ryals v. Home Ins. Co., 410 So.2d 827 (La.App. 3 Cir.1982), writs denied, 414 So.2d 375, 376 (La.1982). Plaintiff objected that no instruction was given that a trespass continues until it is removed, that removal is the proper remedy for the trespass, and that compensation for damage to property can be for the entire damage to the property rather than limited to the market value of the property minus any residual value of the property or to the cost of practical restoration of the property to its condition prior to damages.
In a jury trial, the trial judge is not required to give the instructions submitted by either party, but is obligated to give instructions which properly reflect the law applicable in light of the pleadings and the facts in each case. Manuel v. La. Farm Bureau Cas. Ins. Co., 563 So.2d 916 (La.App. 3 Cir.1990). Adequate jury instructions are those which fairly and reasonably point up issues and provide correct principles of law for the jury to apply to those issues. Oatis v. Catalytic, Inc., 433 So.2d 328 (La.App. 3 Cir.1983), writs denied, 441 So.2d 210, 215 (La.1983).
After a review of the instructions submitted to the jury, we find that the trial judge gave adequate instructions on all the areas and facets of the law pertinent to the case presented to the jury. For this reason, we find that these assignments of error concerning jury instructions are without merit.

VERDICT FORM
Plaintiff claims that the trial court erred when it refused to ask questions on the verdict form pertaining to unjust enrichment, mental pain and suffering, and punitive damages.
Appellants who do not object to the special verdict form are not entitled to raise that issue on appeal. Martinez v. Soignier, 570 So.2d 23 (La.App. 3 Cir.1990), writ denied, 572 So.2d 94 (La.1991).
After a review of the record, we do not find that plaintiff objected to the verdict form utilized by the trial court. Therefore, this issue is not properly before this court.

*1325 JURY'S FINDINGS
Plaintiff claims that the jury erred in finding that he gave Wainoco implied permission to utilize his land in the drilling of the Stone No. 1 well. He also claims that the jury erred in finding that it was necessary for Wainoco to utilize the surface of his property in order to comply with the orders of the Commissioner of Conservation.
However, this court finds that it was not necessary for plaintiff to give defendants permission to utilize his land in the drilling of the Stone No. 1 well. Defendants had a right as a matter of law to utilize plaintiff's land for the following reasons.
The Supreme Court gave a complete discussion on Louisiana's oil and gas conservation law which modifies the traditional concept of private property in Nunez, supra. We restate the pertinent parts of that discussion which pertain to surface ownership as follows:
"In fact, the concept of unitization, embodying the principle of ownership in minerals produced from a common source of supply, co-extensive with the individual ownership of the overlying land, is a departure from the traditional notions of private property. Ownership, defined in La.Civ.Code Ann. art. 477 as `the right that confers on a person direct, immediate, and exclusive authority over a thing,' suggests dominion and does not contemplate that others have rights to the object of ownership. According to La.Civ.Code Ann. art. 490, such exclusive authority applies to the subsurface directly beneath a property owner's tract.
We note, however, that each of these provisions has been modified in recent years to reflect a qualification of sorts in one's rights in private property. Whereas the predecessor to La.Civ.Code Ann. art. 477 [footnote 24 infra ] granted to the owner use of property `in the most unlimited manner, provided it is not used in any way prohibited by law or ordinances,' currently an owner may use, enjoy, and dispose of a thing only `within the limits and under the conditions established by law,' which contemplates a broader range of exceptions to an owner's exclusive authority. And, La.Civ. Code Ann. art. 490's assertion that `the ownership of a tract of land carries with it the ownership of everything that is directly above or under it' was modified in 1979 to add the phrase `[u]nless otherwise provided by law.' Such a change no doubt did occur, at least in part, in recognition of the traits of subsurface minerals in liquid and gaseous form.
Those traits prompted inclusion in the Mineral Code (Title 31) of § 6 which provides:
Ownership of land does not include ownership of oil, gas, and other minerals occurring naturally in liquid or gaseous form, or of any elements or compounds in solution, emulsion, or association with such minerals. The landowner has the exclusive right to explore and develop his property for the production of such minerals and to reduce them to possession and ownership. (emphasis added) 1974 La.Acts No. 50, § 6.25
Thus, it is clear that whatever the plaintiff may own under his tract, it does not include the liquid or gaseous minerals themselves. And, even the `exclusive right to explore' is qualified by the imposition of duties with regard to others who have rights in the common reservoir. La.Rev.Stat.Ann.§ 31:9 and 10. As noted by a scholar on the subject, `[t]he principles of private ownership which involve dominion on the part of the landowner over all substances from the center of the earth to the heavens were inadequate to solve the problems of a substance under the earth, which would migrate to points of lower pressure caused by punctures of the reservoir by drilling.' H. Daggett, supra at 415.
And, what this plaintiff does own under his tract is `subject to reasonable *1326 statutory restrictions and the reasonable exercise of the police power.' According to La.Const. art. I § 4:
Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
24. La.Civ.Code Ann. art. 491, amended 1979 La.Acts No. 180.
25 Although the 1974 Mineral Code apparently first provided statutory authority for the proposition that oil and gas under the ground is not susceptible to ownership, early jurisprudence recognized this very concept. See Frost-Johnson Lumber Co. v. Sallings Heirs, 150 La. 756, 91 So. 207 (1922)."
Nunez, supra, at pages 962, 963.
The Louisiana Mineral Code has several provisions that limit the exclusive rights of the landowner in relation to the use of the surface of his land.
The Commissioner of Conservation is authorized to designate a drilling site "at the optimum position in the drilling unit for the most efficient and economic drainage of such unit." La.R.S. 30:9 C. The Commissioner must also issue a permit before the well can be drilled, and "the issuance of the permit ... is sufficient authorization to the holder of the permit to enter upon the property covered by the permit and to drill in search of minerals thereon." La.R.S. 30:204 A and F. Although La.R.S. 30:217 specifically requires the consent of the owner before any person conducts geological surveys for oil, gas, or other minerals, La.R.S. 30:204 F, authorizing the permit holder to enter the property for drilling purposes, has no such requirement for consent.
The Oklahoma Supreme Court in Texas Oil and Gas Corporation v. Rein, 534 P.2d 1277, 1279 (Okla.1974), held that the Corporation Commission is authorized to establish a well at any location on a spacing unit, to pool working interests within a unit, and to designate an operator to drill and operate the well, regardless of whether the owner of the land on which the well is to be located had consented thereto. The court went on to say that to hold otherwise would frustrate the intent of the Act because the owner desiring to drill would not be entitled to do so unless he held a lease covering the well location designated by the Commission.
Although that case dealt with the drilling of the well itself on unleased property, we hold that the same reasoning would apply to the area adjacent to the well needed for the drilling and operation of the well. This is especially true since La.R.S. 30:204 F allows the permit holder to enter the property for drilling purposes without the owner's consent. Therefore, we conclude that Wainoco was entitled to conduct drilling operations on plaintiff's land. Plaintiff's exclusive authority over his land has been superseded in part by Louisiana's Conservation Law which establishes reasonable statutory restrictions on plaintiff's rights in his private property as required by La. Const. art. I, § 4.
We also find that it was necessary for Wainoco to utilize plaintiff's land. The permit plat that was mailed to plaintiff indicated the optimum location of the well, which was located approximately 22 feet from plaintiff's property. Although the well was not located at the original permitted site, the well was moved only 22 feet farther west after a request from Mr. Raymie Boudreaux, whose residence was located in the vicinity of the well. (See Appendix A and Appendix B attached.) Therefore, given the size of a drilling rig and the surface drilling location with pits, water wells, and related drilling equipment and facilities, we find that it was necessary for Wainoco to utilize plaintiff's land in order to comply with the order of the Commissioner. Otherwise, Wainoco would not have been able to drill the Stone No. 1 well at the optimum location for this unit because this type of well requires two acres for the necessary reserve pits, water pit and water well.

DAMAGES
Plaintiff claims the trial court erred in refusing to compensate him for damages *1327 done by Wainoco. The Louisiana Supreme Court in Nunez, supra, in Footnote 29 at page 964, stated that, should a unit operation create for one landowner within the unit a particular expense, as a result of damage to his premises, or measurable inconvenience, that landowner may be entitled to recover compensation in addition to a proportionate share of production. Therefore, even though Wainoco had a legal right to enter plaintiff's property, if plaintiff can prove he suffered damages as a result of Wainoco's operations, he is entitled to compensation for these damages.
The initial inquiry in determining whether an award of damages is inadequate or excessive must always be directed to whether the trial court's award for particular injuries and their effects upon the particular injured person was a clear abuse of the trier of fact's much discretion in an award of damages. It is only after an articulated analysis of the facts discloses an abuse of discretion that an award may on appellate review, for articulated reasons, be considered either excessive or insufficient. Only after such a determination of abuse has been reached is a resort to prior awards appropriate for purposes of then determining what would be an appropriate award. Absent an initial determination that a trial court's very great discretion in an award of general damages has been abused under the facts of a particular case, the reviewing court should not disturb the trier's award. Reck v. Stevens, 373 So.2d 498 (La.1979).
The jury found that plaintiff had not suffered any damages as a result of the unit operations.
Plaintiff testified that, prior to the drilling of the Stone No. 1, he had leased the entirety of his property to Mr. Boudreaux, his neighbor, beginning October 30, 1980, for $1.00 per year for the next five years for the grazing of cattle. Therefore, plaintiff suffered no measurable inconvenience for the loss of the use of the surface utilized for the operations of the Stone No. 1 well because he had already granted this right of use to another person.
Several experts also testified with regard to the restoration of the property. Mr. Donald Sagrera, an expert in soil sampling and agronomy, testified that the plaintiff's land was fully restored for pasture and grazing and that the vegetation was healthy. Mr. Lloyd Dual, an expert in sampling and soil chemistry, testified that "you could eat it. You could grow a garden in it. Your animals could eat it. They eat dirt. It will not hurt them." He also stated "this is a ... pretty much a model reclamation. You would hope that ... If I owned the property, I would hope it to be just like that." Lynn J. Desselle, an expert in agronomy with a specialty in soil fertility, stated that the property had been restored to utility for agricultural purposes and that the overall restoration was good and reasonable. Kenn Leggett, plaintiff's own expert in the closure of pits, testified that the level of metals, oil, and grease are within the requirements of Statewide Order 29B and that the only basis for soil removal is because plaintiff wanted it removed.
We cannot say the trial court abused its great discretion by finding that plaintiff had suffered no damages.

JUDGMENT NOTWITHSTANDING THE VERDICT
Plaintiff claims that the trial judge erred in granting defendants' Motion for Judgment Notwithstanding the Verdict (JNOV). Defendants' motion claimed that the jury's finding of a contract of rent between the plaintiff and defendants was contrary to both the law and the evidence.
On November 30, 1982, plaintiff sent a letter to Wainoco which reads as follows:
"Gentlemen:
You drilled the R.R. Stone # 1 well in the W½ of W½ of Section 12, Township 15 South, Range 12 West, Cameron Parish, Louisiana. By now I am satisfied you know, but, for the sake of notification, *1328 let me advise you that I own the W½ of the W½ of Section 12, Township 15 South, Range 12 West, Cameron Parish, Louisiana, less and except that part thereof beginning 300 ft. North of the Pleasant Beach Subdivision and extending North for 150 feet.
When you drilled the aforesaid well, you placed part of your drilling equipment and associated things, together with a great majority of your mud pit, a water well and a water pit, etc., on my property. After you completed the well, you took part of the contents of your mud pit out of the mud pit and spread it on my land North of the well site. A lawsuit has been filed against you for damages concerning this.
To date you have failed and refused to remove your mud pit, water well, water pit, material you took from your mud pit and spread across my property and, in fact, you went back on my land a second time to rework the Stone well, all without my consent.
You are hereby notified that beginning this date, and/or as far back as the Court will permit me to do so, I will charge you, and you must pay me $2,000.00 per month for the use of the surface of my property as hereinabove stated.
You are further notified that it is my intent to amend my lawsuit against you wherein I seek surface damages, to include the above stated $2,000.00 per month for surface rental for so long as you use and/or do not restore the surface of my property to its original condition and/or back to as near its original condition as possible."
In written reasons for judgment, the trial judge found that the wording of the letter was not in the usual language of an offer which invites some sort of acceptance. No rental was paid and no agreement to pay rental was made. The use of plaintiff's land was in litigation at the time and that constituted a judicial denial of plaintiff's position as stated in the letter. The trial judge also found that there was never any agreement between the parties, tacit or otherwise, as required by La.C.C. art. 1906. For these reasons, the trial judge found the jury made an error of law in finding the existence of a contract and in granting an award for rental and granted defendants' Motion for JNOV.
The Louisiana Supreme Court in Anderson v. New Orleans Public Service, 583 So.2d 829, at page 832 (La.1991), set forth the criteria to be used in determining when a Motion for JNOV is proper as follows:
"A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. Scott [v. Hospital Service District No. 1, 496 So.2d 270 (La.1986) ], supra. In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, *1329 reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated."
A review of all the evidence, with reference to an implied contract for rental between plaintiff and defendants, shows that there was no evidence in the record to suggest that plaintiff and defendants had entered into a contract for the payment of rent in the amount of $2,000.00 per month. Therefore, we find that the trial judge was correct in granting defendants' Motion for JNOV.
For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Adam G. Nunez.
AFFIRMED.

*1330 
NOTES
[*] Honorable Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.