989 So.2d 298 (2008)
George James FULLER and Charles Milton Fuller, Plaintiffs-Appellees
v.
XTO ENERGY, INC., Defendant-Appellant.
No. 43,454-CA.
Court of Appeal of Louisiana, Second Circuit.
August 13, 2008.
*299 Liskow & Lewis, by Joe B. Norman, Kelly B. Becker, New Orleans, for Appellant.
Michael S. Coyle, Ruston, for Appellees.
Before BROWN, WILLIAMS, and MOORE, JJ.
BROWN, Chief Judge.
Plaintiffs, George "James" Fuller and Charles Milton Fuller, own land and minerals located in the West Half of the Northeast Quarter of Section 19, Township 20 North, Range 2 West, Lincoln Parish, Louisiana. The Fuller tract lies adjacent to and west of another tract in Section 19 owned by the Williams family; however, the minerals on this Williams tract are owned by their ancestors-in-title, the Waller family. Both the Fuller and Williams tracts are subject to an Oil, Gas and Mineral Lease held by defendant, XTO Energy, Inc. ("XTO").
Plaintiffs filed this action against XTO seeking damages arising out of XTO's construction of a drilling site that straddled the two tracts, i.e., a site which sat partially on plaintiffs' property and partially on the Williams' property. XTO filed a reconventional demand for damages arising out of alleged acts of interference with XTO's exercise and use of its leasehold rights.
After a bench trial, the court awarded plaintiffs $68,870.04 for the value of dirt moved from their property onto the Williams property to level the drill site and $1,251.77 for the value of timber removed from plaintiffs' property by XTO. The court rejected plaintiffs' claims for treble damages and attorney fees and denied the claims set forth in XTO's reconventional demand. Defendant has appealed from this judgment and plaintiffs have answered the appeal.[1] We reverse the award for damages for conversion of the dirt and affirm the judgment in all other respects.

Discussion
Both the Fuller tract and the Williams property are located within the CV Davis RA SU M unit, which encompasses the entirety of Section 19, Township 20, Range 2 West, Lincoln Parish, Louisiana. Plaintiffs will share in any unit production on the basis of surface ownership and resulting royalty income.
Mark Wright, a reservoir engineer with XTO, and Donna Mullen, XTO's Regional Land Manager for the East Texas District, testified that, in anticipation of developing the minerals within the CV Davis RA SU M Unit and surrounding area, defendant, using accepted geologic and petroleum engineering practices, determined their optimum drilling locations without reference to or consideration of surface *300 ownership of the involved properties. The proposed drilling locations were furnished to the surveyor to physically identify the drilling sites. According to Wright, Mullen and Roy Holloway, a contract land man for XTO, the originally proposed location for the Waller well was to the west of the current location. Wright testified that it was determined that because of the existence of a creek drain and pipeline, the original location could not be utilized. After consideration of different alternate locations, Wright approved the current location, also referred to as the "Waller location," which utilizes .69 of an acre on the Fuller property and 2.09 acres on the adjoining Williams property, for a total of 2.78 acres. This site is located approximately 1000 feet from both the north and east section lines.
Although its lease did not require defendant to pay any surface damages for the construction of the well site, XTO, in accord with its customary practices, contacted and attempted to enter into voluntary pre-entry settlement agreements with the involved landowners. With the exception of plaintiffs, XTO was successful in obtaining pre-entry agreements from all involved landowners on the same terms of $1,500 per acre utilized and the appraised value of timber affected by XTO's operations.
Based upon concerns expressed by the Fullers for their poultry and farming operations, XTO altered its operating plans by constructing an access road on the adjoining Aycock property rather than using an existing road on the Fuller property. Holloway testified that after the decision to move the access road was made, he met with James Fuller to inform him that XTO intended to level the drilling site by moving dirt from the higher elevation on the Fuller property onto the Williams property. According to Mullen and Holloway, the Fullers vehemently opposed this and any operations on their property. Holloway testified that defendant got a timber appraisal of the trees that would be destroyed by the well pad construction and attempted to tender the estimate to plaintiffs, who refused the offer.
Holloway and Mullen stated that at that point, XTO had no alternative but to proceed with its mineral operations pursuant to the terms and conditions of the parties' lease. In addition, we note that because the Fuller tract is within an authorized drilling unit, there is no requirement for the landowner's consent or for pre-entry payment. See Nunez v. Wainoco Oil and Gas Company, 606 So.2d 1320, 1326 (La. App. 3rd Cir.1992), writ denied, 608 So.2d 1010 (La.1992), in which the court stated:
The Commissioner of Conservation is authorized to designate a drilling site "at the optimum position in the drilling unit for the most efficient and economic drainage of such unit." La. R.S. 30:9C. The Commissioner must also issue a permit before the well can be drilled, and "the issuance of the permit . . . is sufficient authorization to the holder of the permit to enter upon the property covered by the permit and to drill in search of minerals thereon." La. R.S. 30:204A and F. Although La. R.S. 30:217 specifically requires the consent of the owner before any person conducts geological surveys for oil, gas, or other minerals, La. R.S. 30:204F, authorizing the permit holder to enter the property for drilling purposes, has no such requirement for consent.
Plaintiffs filed suit asserting claims for intentional trespass and misappropriation of dirt, and seeking damages for timber removed from their land to construct a well pad on the Waller location, together with treble damages and attorney fees.
*301 Defendant filed an answer and reconventional demand alleging that plaintiffs precluded and delayed XTO's drilling and that these wrongful acts constituted a breach of the lease as well as an interference with XTO's exercise and use of its rights pursuant to the lease.
Following a bench trial, in a written ruling, the trial court concluded that:

Resolution of this issue seems to necessarily involve extreme results. On the one hand, [Plaintiffs] are entitled to recover damages to an extent to which they would not be entitled had the well location been entirely on their Property. However, to rule otherwise would be to authorize excavations on the property of a lessor for use on well locations on some distant well site on a different [lease]. An examination of the lease fails to provide any explicit authority for the actions of XTO. However, it cannot be said that the actions of XTO amount to a trespass as it had contractual permission to be on the Property. Further, had XTO constructed the location entirely on [plaintiffs' property], its actions would have been justified. . . . This Court finds that the removal of dirt by XTO amounted to the tort of conversion. (Emphasis added).
According to Clifton Hennigan, a contract construction foreman for XTO, the construction technique for the Waller location was "cut and level." This procedure required cutting down of the higher elevations (which in this case were located on the Fuller property) and leveling out to accommodate the drilling rig. Hennigan testified that the required tolerances are within one inch of level. Hennigan stated that the first step in the construction of the Waller location was to remove the fence and clear the timber from that part of the Fuller property which was to be involved. Hennigan stated that to insure protection of the Fullers' cattle, defendant made arrangements for and immediately constructed a fence around the affected area. This was confirmed by Billy "Hop" Foster, foreman for the company involved in the well pad construction. On June 16, 2005, prior to the movement of dirt on the Fuller property, defendant had elevation shots taken so that the amount of dirt which would be involved could be determined. Hennigan testified that due to the obvious anger of the Fullers, XTO ceased operations mid-June and did not resume work at the site until July 5, 2005.
All of the witnesses testified that the location of the drilling pad was a usual, standard, and customary drilling location and that all of the dirt at issue from the Fuller property came from the designated.69-acre-area and was utilized in the construction (leveling) of the well pad at the Waller location. Foster, Hennigan and James Fuller testified that the Waller location was leveled via the use of bulldozers and that no dirt was trucked away from the site. Both Foster and Hennigan stated that XTO did not sell any dirt moved from the Fuller tract.
Both Foster and Hennigan confirmed that the use of a cut and level was the appropriate construction technique to employ at the Waller location. Plaintiffs did not introduce any evidence to contradict that presented by defendant regarding the establishment of their well site or their construction procedures. In fact, the parties in the instant case entered into the following stipulation after presentation of the evidence:
If the "Waller Location" were located entirely upon the [Fuller] Property, XTO was entitled to construct the Waller Location and would not owe for use of the Property, specifically, the soil utilized.
By entering into the above stipulation, plaintiffs conceded the reasonableness of *302 XTO's use of on-site dirt for construction of an oil rig well pad. We find that the evidence clearly shows that XTO's use of the surface of the leased premises constituted a reasonable use of its rights under the lease. The trial court's belief that this would "authorize excavations on (lessor's property) for use on well locations on some distant well-site" is incorrect. Neither that issue nor the hauling of the dirt to a distant location within the unit is applicable to this case.
In Prather v. Chevron, U.S.A., Inc., 563 F.Supp. 1366 (M.D.La.1983), the United States district court for the Middle District of Louisiana, in a case similar to the one sub judice, applied Louisiana law and recognized that drilling wells for oil and gas production requires that the surface of the land be disturbed to some degree and that this necessarily involves the movement of dirt. The court in Prather held that under the Louisiana Mineral Code and applicable lease provisions, the right to move dirt on the leased premises includes the right to use the moved dirt to build the well site without paying for the dirt. Prather, 563 F.Supp. at 1368.
Given the reasonableness of the excavation for the well pad construction, the fact that the majority of the drill pad, including the well bore itself, was not on the Fuller property is not relevant. Because of the existence of the governmental unit, the Waller well as the unit well for CV Davis RA SU M was an operation for the exploration and development of the oil and gas minerals underlying all tracts comprising the unit and for all owners thereof. The Louisiana Conservation Act defines the unit as the maximum area which may efficiently and economically be drained by one well. La. R.S. 30:9(B). The mineral owners of the separate tracts comprising a drilling unit authorized by the Office of Conservation have been viewed as virtual co-owners of the unitized mineral interests. Willis v. International Oil & Gas Corp., 541 So.2d 332 (La.App. 2d Cir.1989); Nunez, supra. The lease provisions of the Fuller tract contemplate that exploration, development and production of the lease premises and "land pooled therewith" may effectively maintain the lease. Therefore, the fact that the well site affected two of the tracts comprising the unit does not in any way detract from the exploration benefit of the well received by all minerals owners in the unit, including the Fullers.
We also must reject the trial court's conclusion that XTO committed the tort of conversion. As noted by this court in Jefferson v. Crowell, 42,177 (La.App. 2d Cir.05/09/07), 956 So.2d 746, 749, citing Quealy v. Paine, Webber, Jackson & Curtis, Inc., 475 So.2d 756 (La.1985), a conversion consists of an act in derogation of a plaintiff's possessory rights, and any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. As in trespass, the lack of consent by the owner or possessor is a prerequisite. Quealy, supra. The parties' lease gives XTO, inter alia, use of the surface of the Fuller property and the evidence establishes that this use was reasonable. We note (and XTO has acknowledged) that defendant has an obligation to restore the property upon completion of its oil and gas activities. Corbello v. Iowa Production, 02-0826 (La.02/25/03), 850 So.2d 686.
Both parties take issue with the trial court's timber damage award of $1,251.77. Plaintiffs urge this court to award $1,842.92, an amount based upon calculations made by one of the plaintiffs. Defendant suggests that this court decrease the award to $660, a figure obtained from an independent appraisal performed by a certified timber appraiser. It was within the trial court's discretion to award neither amount sought by the parties but *303 to instead award what it determined to be an appropriate amount for the timber removed during XTO's operations.
We likewise find no error in the trial court's conclusion that the timber trespass statute is inapplicable in the instant case. XTO entered upon and used the surface of the Fuller property pursuant to terms set forth by the parties in their lease, which is the legal contract from which defendant derives its rights to, inter alia, remove timber during the scope of its oil and gas operations.

Conclusion
For the reasons set forth above, that portion of the trial court's judgment awarding plaintiffs, Charles Milton Fuller and George James Fuller, the amount of $68,870.04 for the value of dirt "converted" by defendant, XTO Energy Inc., during its mineral operations, is hereby REVERSED, and, IT IS HEREBY ORDERED, ADJUDGED and DECREED that there be judgment herein rejecting this demand of plaintiffs, Charles Milton Fuller and George James Fuller. In all other respects, the judgment of the trial court is AFFIRMED. Costs are assessed to plaintiffs, Charles Milton Fuller and George James Fuller.
NOTES
[1] Defendant did not appeal the trial court's denial of its reconventional demand for damages for interference by plaintiffs with its rights under the lease.